COMMONWEALTH *vs.* EDWARD B. PETERSON.

Middlesex.    November 8, 1926. — November 23, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Homicide.  Witness*, Cross-examination.  *Practice, Criminal*, Cross examination of defendant.  *Evidence*, Materiality.

At the trial of an indictment charging manslaughter, there was evidence that, while the defendant and a third person were engaging in a wordy altercation in a street, the deceased, somewhat "unbalanced" in his walk, came from the sidewalk and began to argue, or attempted to argue, with the defendant in support of the position taken by the third person; that the defendant objected to the deceased's interfering; that, "cursing and swearing," the deceased followed the defendant and struck him on the chest; that the defendant then advanced a foot or so and struck the deceased "on the side of the face," and he fell "in a crunch" to the ground, striking his head on the ground or on the curbstone, and subsequently died as a result of the blow.    Upon an assignment of errors by the defendant, it was *held*, that

(1) After a police officer had testified to a conversation with a physician at the hospital in the presence of the defendant in the course of which the physician had stated that the deceased "is an alcoholic," it was not error to refuse to permit the defendant in direct examination to testify that the officer had told him of that statement by the physician;

(2) It was proper to permit the defendant to be asked in cross-examination, respecting the condition of the deceased, "Now he was so unsteady that you could have stolen off or very quietly set him on the sidewalk and walked away, couldn't you?";

(3) It was proper and within the discretion of the judge to permit

the defendant to be asked in cross-examination questions showing his state of mind toward the deceased and the third person which influenced his speech and action at the time he struck the deceased, and also questions by which it was sought to test the credibility to be given to the testimony of the defendant that the deceased struck him first, and to show that the defendant was quarrelsome by reason of what had taken place immediately preceding the time the defendant struck the deceased;

(4) It was proper to refuse to order a verdict of not guilty: there was evidence that the result of the defendant's blow caused the death of the deceased, and that there was no occasion for such a blow;

(5) It was proper to refuse to rule, "On all the evidence, the jury would not be entitled to find that the defendant committed an assault and battery on the person of the deceased without justifiable cause";

(6) There being no evidence upon which the jury could find within the rules of proof applicable to the administration of the criminal law that the deceased had a felonious intent to injure the defendant or that the defendant had reasonable grounds to fear danger to his life or serious bodily injury, it was proper to refuse to rule, "If the jury find that the defendant, under all the circumstances of the case, had reasonable cause to believe that it was necessary to protect his person, he was justified to use the force necessary to defend his person and prevent the impending danger, and under such conditions he would be justified in the use of such force as was reasonably necessary, and would not be responsible for the consequences that followed the blow."

INDICTMENT, found and returned on January 7, 1926, charging that the defendant on December 24, 1925, did assault and hit and by such assaulting and hitting did kill John H. Manning.

In the Superior Court, the indictment was tried before *Dubuque*, J. Material evidence and exceptions saved by the defendant are described in the opinion. The defendant was found guilty on February 18, 1926. On March 25, 1926, a copy of the transcript of the evidence was delivered to the clerk of courts, who on the next day notified counsel for the defendant of the completion of the summary of the record. The defendant's assignment of errors was filed in the Superior Court on April 26, 1926.

The case was submitted on briefs.

*W. J. Patron & F. D. McCarthy*, for the defendant.

*A. K. Reading*, District Attorney, & *S. H. Lewis*, Assistant District Attorney, for the Commonwealth.

PIERCE, J. The facts which led to the indictment, as told by the defendant and his witnesses, in substance are

as follows. On the evening of December 24, 1925, the defendant, with his brother, was driving an automobile, and approached the intersection of River Street and Putnam Avenue, Cambridge, Massachusetts. At the same time a team driven by one Kelley came into River Street. The defendant was able to stop in season to avoid a collision with the team. The driver of the team drove to the side of the road and stopped there. The defendant got out of the automobile and went over to where the team was with Kelley seated in it. A wordy altercation followed between the defendant and Kelley as to whether Kelley had had the right of way and the automobile was lighted. While this talk was going on one John H. Manning, somewhat "unbalanced" in his walk, came from the sidewalk and began an argument, or attempted to argue, with the defendant in support of the position taken by Kelley, that Kelley's team had the right of way. The defendant protested that it was none of his (Manning's) business, saying, "Go ahead, it is none of your business at all, don't interfere." During the talk the defendant "backed up a little bit and turned." Manning "cursing and swearing," followed, striking the defendant twice "on the chest." The defendant then advanced a foot or so and struck Manning "on the side of the face." Manning fell "in a crunch" to the ground striking his head on the ground or on the curbstone and subsequently died as a result of this blow.

The defendant and his brother testified that they picked Manning up, that he needed assistance, that they stood him up on the sidewalk and after two minutes drove away. Later the same evening the defendant was taken to the hospital where Manning was and there had a conversation with the sergeant in whose custody he was. The defendant offered to testify that the sergeant had said to him in substance that "he had talked with Dr. Turner and Dr. Turner had pronounced the injured man, Manning, as an alcoholic." The evidence was excluded rightly. The sergeant had testified that he had the following conversation with Dr. Turner in the presence of the defendant: "'What do you say about this fellow here, Doctor? . . .

How serious is he?' and he said, 'Well, I cannot see any marks or bruises on him. . . . He is an alcoholic. I can not say anything more than I have him on the danger list.'"

All the evidence which would flow from the offered testimony as is seen was already in evidence, and the defendant had no reason to think that the story of the conversation with the doctor testifying in behalf of the Commonwealth would be claimed by the Commonwealth to be false and fabricated in the interest of the defendant.

The second assignment of errors is based upon the allowance in cross-examination of the defendant of the question which follows: "Now he was so unsteady that you could have stolen off or very quietly set him on the sidewalk and walked away, couldn't you?" The force of the question seems to have been lost in discussion with the trial judge on the rights and limitations of the plea of self defence, all of which were in no way germane to the point in issue. The question was proper, not alone because it was put in cross-examination of the witness, but because it served to test the testimony of the defendant that Manning was unbalanced in his walk, the degree of it, and ultimately, as bearing upon the question whether the defence to the blows of Manning required blows in return.

The third, fourth and fifth exceptions all relate to questions on cross-examination intended to show the state of mind of the defendant toward Kelley and Manning which influenced his speech and action at the time he struck Manning. This examination was clearly within the discretion of the trial judge, and there is nothing in the record which discloses unfairness in its exercise or any abuse of it. *Commonwealth* v. *Schaffner*, 146 Mass. 512. *Commonwealth* v. *Brady*, 147 Mass. 583. *Jennings* v. *Rooney*, 183 Mass. 577, 579. *Commonwealth* v. *Min Sing*, 202 Mass. 121.

Exceptions six, seven, eight and nine, were taken to questions in cross-examination of the defendant. As answered, the questions had a legitimate bearing upon the credibility to be given to the testimony of the witness, to the effect that Manning first struck him, as well as to establish the claim of the Commonwealth that the defendant

was "sore and quarrelsome" by reason of what had taken place immediately preceding the time the defendant struck Manning.

The tenth exception is not argued by the defendant, and is treated as waived.

The eleventh exception, to the refusal to direct a verdict, was denied rightly. There was evidence to warrant a finding that Manning did not strike the defendant, that the defendant did strike Manning, and that Manning fell and died as the result of such blow. There was further evidence that warranted a finding that the defendant to protect himself from the assault of Manning, if there were such, had no occasion to use force and violence upon him.

The defendant's request numbered "1," "On all the evidence, the jury would not be entitled to find that the defendant committed an assault and battery on the person of Manning without justifiable cause," was refused rightly. On the defendant's testimony it could have been found that after he was struck on the chest by the fist of Manning, he advanced, "backed up," and struck Manning in the face with such force that Manning was felled to the ground in a "crunch"; and therefrom it could be further found that the defendant became the assailant in using force which exceeded the bounds of defence and prevention.

Request numbered "2" was, "If the jury find that the defendant, under all the circumstances of the case, had reasonable cause to believe that it was necessary to protect his person, he was justified to use the force necessary to defend his person and prevent the impending danger, and under such conditions he would be justified in the use of such force as was reasonably necessary, and would not be responsible for the consequences that followed the blow." Upon the evidence for the defendant, this was a case where, following a heated argument with the defendant, Manning, seemingly provoked and irritated by the words of the defendant above quoted, and others not reported, committed a simple assault on the defendant or engaged with him in mutual combat, neither he nor the defendant having a purpose to kill the other or to inflict on him serious or griev-

ous bodily harm. In such circumstances, the right of self defence does not accrue to the person assaulted until he has availed himself of all proper means in his power to decline the combat; and unless it is apparent that the purpose of the assailant is to inflict great bodily harm or that the defendant had a reasonably well grounded apprehension that such was the fact, the defendant cannot justify homicide in self defence. The evidence does not disclose any facts upon which the jury could find within the rules of proof applicable to the administration of the criminal law that Manning had a felonious intent to injure the defendant or that the defendant had reasonable grounds to fear danger to his life or serious bodily injury. Without such facts or apprehension, the defendant cannot give blow for blow and justify homicide in self defence. It follows that the request for instruction was not applicable to the facts which the evidence for the defendant tended to prove; and equally evident that he was not entitled to the instruction if the evidence established the claim of the Commonwealth that the defendant was the assailant.

We find no error in the statement of the judge, to which exceptions 12, 13, 14 and 15, were taken; it related to the principles of law which he told the jury were applicable to the facts of this case, and generally to the plea and proof of self defence in an indictment for homicide. It of course was not error further to state that the principles of law thus disclosed were enunciated in *Commonwealth* v. *Barnacle,* 134 Mass. 215, 216, and in *Commonwealth* v. *Crowley,* 168 Mass. 121, 125, 126.

*Judgment to stand.*