COMMONWEALTH *vs.* FERNAND J. LACASSE.

Essex.    April 2, 1974. — May 6, 1974.

Present: TAURO, C. J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Homicide.*

In a criminal proceeding wherein the defendant was convicted of
manslaughter, there was no error in refusing to charge the jury on self-
defence with respect to involuntary manslaughter where it appeared
that if the defendant, during an altercation while he was in a room
with the victim and another man, had reason to apprehend harm
from a fight with the other two, he made no attempt to avoid a fight by
retreating from the room but instead drew a loaded pistol from his
pocket and struck the victim on the head with it, whereupon a
struggle with the victim ensued in which the pistol was fired, killing
the victim, and it did not appear that there was anything to prevent
the defendant from leaving the room. [273-274]

INDICTMENT found and returned in the Superior Court on
January 14, 1972.

The case was tried before *Bennett*, J.

*Francis J. DiMento* (*Thomas C. Cameron* with him) for
the defendant.

*John J. Jennings*, Assistant District Attorney, for the
Commonwealth.

REARDON, J.   The defendant was indicted for first de-
gree murder and tried before a jury in the Superior Court
where he was found guilty of manslaughter. The case was
taken by the Appeals Court under G. L. c. 278, §§ 33A-
33H, and the judgment was affirmed. The defendant's
application for further appellate review under G. L.
c. 211A, § 11, was granted limited to the issues raised by the
defendant's fifth assignment of error, viz., whether there

was error in "refusing to charge the jury that, with respect to involuntary manslaughter, the defense of self-defense is available to the defendant." We conclude that on the evidence adduced at trial there was no error.

The evidence could have shown that the decedent, Bruce Jordan, was a tenant in a building owned by the defendant in Lawrence. On December 12, 1971, the defendant, having learned that Jordan appeared to be moving another person into the apartment, went there that evening to investigate. He took with him in his pocket a loaded .25 caliber Colt semi-automatic pistol which he habitually carried for self-protection while in certain sections of Lawrence. There was a bullet in the chamber and the safety was off. He entered Jordan's apartment and found no one home. He then went to the apartment of a neighboring tenant to await Jordan's return. Sometime later he went back to Jordan's apartment and was admitted. Then present in the apartment in addition to Jordan were one Annette Demers and one Lorenzo Rosado. Jordan presented Rosado to the defendant as the person who would take over the apartment. With the defendant standing in the doorway, a heated discussion began. The defendant refused to accept Rosado as a tenant. He next complained to Jordan about the presence of a dog in the apartment and some scratches which had been made on the door. Jordan then declared he was moving out immediately, disconnected the television set, and wrapped the cord around it. He called the defendant a vulgar name. The defendant moved from the doorway to within two feet of Jordan and said, "I can take six like you before breakfast in the morning." The defendant testified that at this time he saw Rosado, who was seated on a sofa approximately three feet to his right and on the other side of a coffee table, pull a knife from his pocket. The defendant extracted the gun from his pocket. He next saw Jordan who was in front of him moving toward him. The defendant then took the gun and struck Jordan on the head with it. Both men fell to the floor, and in the ensuing struggle the gun was fired, killing Jordan.

The sole question before us is whether the defendant was entitled to an instruction on self-defence with respect to the crime of involuntary manslaughter. Involuntary manslaughter is defined as "an unlawful homicide, unintentionally caused (1) in the commission of an unlawful act, malum in se, not amounting to a felony nor likely to endanger life (Anderson, Wharton's Criminal Law and Procedure, § 289), or (2) by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct. [Cases cited.]" *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). The trial judge charged only as to the second aspect of the crime. The defendant's theory in desiring an instruction on self-defence is that if he reasonably believed his life was in danger he was justified in taking the gun from his pocket and striking Jordan. In that case his actions would have been in self-defence and thus reasonable. If so, these actions would not have constituted "wanton or reckless conduct" and would not have been involuntary manslaughter.

We are convinced, however, that there was no evidence to support the instruction requested. Before a defendant is entitled to an instruction on self-defence, there must be evidence that he first took advantage of every opportunity to avoid the combat. *Commonwealth* v. *Peterson*, 257 Mass. 473, 477-478 (1926). *Commonwealth* v. *Hartford*, 346 Mass. 482, 490 (1963). *Commonwealth* v. *Kendrick*, 351 Mass. 203, 212 (1966). There is no indication from the record that the defendant (who appeared to have initiated the confrontation which resulted in the fatal struggle) made any attempt to avoid a fight. The evidence is overwhelming that at all relevant times the door behind the defendant was wide open. This was the recollection of every witness but one. The defendant himself testified that he had intentionally left the door open "105 degrees." Only Rosado, testifying for the Commonwealth, stated that the door was closed, and his testimony on that point was completely discredited by defence counsel. Even if the door

were closed there was no evidence that this posed any serious obstacle to the defendant's leaving the apartment instead of swinging the loaded gun at the head of Jordan. It was not at all shown that an attempt to retreat would have been futile. When Rosado allegedly produced a knife he was three feet from the defendant and separated from him by a coffee table. The defendant was about two steps from the door. At that point there had been no movement by Jordan which the defendant might have believed would have interfered with an attempt to turn and leave. But, instead of so doing, the defendant withdrew the gun from his pocket. Having chosen this alternative, the defendant had no right to an instruction that his actions might have been in self-defence. *Commonwealth* v. *Lacasse*,      Mass. App. Ct.      ,      , n. 4 (1973).[a] Since the requested instruction was unsupported by evidence it was properly refused. *Commonwealth* v. *Costa*, 360 Mass. 177, 184 (1971).

We therefore discern no error in that portion of the case which we brought here for review.

*Judgment of the Superior Court affirmed.*