COMMONWEALTH vs. JOHN J. MAGUIRE.

Suffolk. April 3, 1978. — July 12, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Self-Defense. Practice, Criminal,* Charge to jury. *Evidence,* Evidence at preliminary hearing.

A defendant charged with breaking and entering a dwelling house in the nighttime with intent to commit armed robbery, assault of the two inhabitants while armed with a knife and armed robbery, who claimed that he pursued one of the victims to his apartment only after being threatened by him with a rifle, was not entitled to an instruction on self-defense. [770-774]

At a criminal trial, the prosecutor's question to a defense witness as to whether she had testified at the defendant's District Court trial did not violate G. L. c. 278, § 23, where the witness was not pivotal to the defense and where there was no basis on which the jury could reasonably infer that the defendant's failure to call the witness indicated a failure to offer any evidence in his defense in the lower court. [774-775]

INDICTMENTS found and returned in the Superior Court on April 11, 1975.

The cases were tried before *Irwin,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas Hoffman* for the defendant.

*Michael J. Traft,* Special Assistant District Attorney (*Paul A. Mishkin,* Special Assistant District Attorney, with him) for the Commonwealth.

LIACOS, J.  The grand jury for Suffolk County returned two indictments against the defendant. The first charged him with breaking and entering a dwelling house in the nighttime with intent to commit robbery, and with assault of the two inhabitants while armed with a knife. G. L. c. 266, § 14. The second indictment charged the defendant

with armed robbery. G. L. c. 265, § 17. Following a trial in the Superior Court, Suffolk County, the jury found the defendant guilty as charged on both indictments. The defendant appealed pursuant to G. L. c. 278, §§ 33A-33G. The cases were transferred here from the Appeals Court on our allowance of the defendant's motion for direct appellate review. G. L. c. 211A, § 10 (A). We find no error and affirm the judgments of the Superior Court.

The defendant assigns three errors, the first of which is waived because it was not argued in the defendant's brief. *Commonwealth* v. *Martin*, 358 Mass. 282, 283 (1970). The second assignment attacks the judge's instructions to the jury on the elements of self-defense, asserting that the charge effectively removed that defense from the consideration of the jury, thereby depriving the defendant of his right to a fair trial. To consider this claim we view the evidence in the light most favorable to the defendant. *Commonwealth* v. *Peterson*, 257 Mass. 473, 477 (1926). The defendant's version of the incident giving rise to the indictments is as follows.

The defendant lived with his brother on the third floor of an apartment building. One John Parsons (Parsons) and his wife lived below them on the second floor. About 11:30 P.M. on February 4, 1975, the defendant and his brother were dressed in their underwear, preparing to go to bed following a party or gathering with friends. In response to a loud knock the defendant and his brother opened their apartment door and discovered Parsons standing there with a rifle pointing at them.[1] Parsons complained about the noise at the party and threatened to shoot the brothers, whereupon they lunged at Parsons. Parsons dropped the rifle, started down the stairs, and called back to the brothers: "That's all right, I have more downstairs."[2] The two brothers pro-

---

[1] Parsons testified and denied having a rifle in his possession at this time.

[2] The brothers knew that Parsons had "gun stickers" on his truck and had been told that Parsons had a collection of guns.

ceeded down the stairs after Parsons.[3] The brothers reached
Parsons's door just as it shut behind him. The defendant's
brother kicked the door open, entered the apartment, and
discovered Parsons on the telephone. Parsons's wife was also
in the apartment. The brothers hit Parsons and shoved him
into the bathroom. The defendant armed himself with a
knife found in the kitchen, and used it to cut the telephone
line. The brothers opened a display cabinet by unscrewing
its hinges, removing four rifles, a handgun, and a locked
box. They then returned to the bathroom where Parsons lay
unconscious, possibly injured as a result of hitting his head
on the bathtub after being pushed into the bathroom. The
brothers placed Parsons on a bed and covered him with a
blanket. They then left the apartment, taking the guns, a
Knights of Columbus ceremonial sword, a skinning knife,
and a locked box with them. The locked box contained four
$50 bonds, two $100 bonds, and $140 in Canadian money.

1. The claim of self-defense at trial was based on the
defendant's theory that he was entitled to have the jury in-
structed that if they found that the defendant and his
brother[4] reasonably believed it necessary to pursue Parsons,
break into his apartment, and use reasonable force to
disarm him so as to prevent a further threat of assault, the
defendant should be found not guilty.

The judge charged the jury: "There has been some sug-
gestion to you based upon some evidence that is before you
of the question of self-defense. Now, again, I want to re-
mind you people that you are the finders of the facts; but I
would instruct you that if you find in this situation the facts
that this man had gone back into his home, regardless of
what had happened prior, had shut the door and that these
defendants had pursued him, for the purpose of so-called

---

[3] A neighbor testified that she heard the defendant say: "That . . .
threatened me with a gun." It is not clear whether the statement was
made as the defendant was entering the apartment or when he was leav-
ing it.

[4] A codefendant, also found guilty on similar indictments, but as to
whom no appeal is before us.

self-defense, based upon the facts as you find them, you would have to find in order for that to be a legitimate self defense that these people *were in fact back to the wall, they had no other alternative, that they were in some immediate danger and were in fact threatened by this particular individual.* That is your decision to make with reference to ·these facts" (emphasis added).[5]

The defendant argues that the judge's charge left the jury with no choice but to reject his claim of self-defense.[6] The defendant argues that the cases require only that the person claiming self-defense have a "reasonable belief" that no other means would suffice, or that "no proper means" of avoiding combat exist; whereas the judge required that the jury conclude that the defendant and his brother, in fact, "had no other alternative" but to pursue Parsons into his apartment. Admitting that alternatives were available to him — such as calling the police or remaining in his apartment and locking the door — the defendant maintains that the lack of qualification in the charge effectively removed the issue of self-defense from the jury. Another aspect of the

---

[5] Following is the remainder of the judge's charge on the issue of self-defense: "If you believe, if you believe the facts to be as were testified to by one defendant as to what he did under those circumstances — and again it is your memory that counts — I would instruct you as a matter of law that the availability of self defense in that situation as a defense to the assault charge would not be available to those defendants if you find, as a matter of fact, that they were not at that moment in time protecting themselves from either the imminence of assault or from an actual assault and battery or a threat of grave personal injury to their person. If you find that they did in fact assault Mr. Parsons in his home and at that time that they assaulted him they were not in the legitimate exercise of their self defense, then the defense of self defense is not available to them."

[6] At a bench conference immediately following the charge to the jury, defense counsel objected to the instruction on self-defense, offered an alternative instruction, and took an exception when the offer was rejected. The offered instruction was that "if Mr. Parsons had threatened [the brothers] with a gun and if they believed that he was going to get another gun inside his apartment and might use it on them, they would have a right to follow him into the apartment and use reasonable force to disarm him. In this regard, they could use only such force as was reasonably necessary under the circumstances."

defendant's argument makes a similar point, emphasizing the difference between a "reasonable apprehension" of harm, as required by the cases, and the judge's instruction to the jury that the defendant and his brother must have been "in some immediate danger and were in fact threatened." The essence of his argument is to treat the facts of these cases as involving a problem of "retreat." See, e.g., *Commonwealth* v. *Gagne*, 367 Mass. 519 (1975); *Commonwealth* v. *Shaffer*, 367 Mass. 508 (1975), and cases cited therein; Beale, Retreat from a Murderous Assault, 16 Harv. L. Rev. 567, 580 (1903). In fact, this is a case where the judge properly could have refused as matter of law to give any charge on self-defense. *Monize* v. *Begaso*, 190 Mass. 87 (1906). See *Commonwealth* v. *Peterson*, 257 Mass. 473 (1926).

It is the rule that where the issue of self-defense has been sufficiently raised by the evidence, the defendant is entitled to an instruction which places on the Comonwealth the burden of disproving the factor of self-defense beyond a reasonable doubt. *Commonwealth* v. *Collins*, 374 Mass. 596, 599 (1978). *Commonwealth* v. *Stokes*, 374 Mass. 583, 587-590 (1978). *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 692 (1976). Cf. *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975) (State must prove beyond reasonable doubt absence of heat of passion on sudden provocation when issue properly presented). But such an instruction need not be given where there was insufficient evidence to support a theory of self-defense. *Commonwealth* v. *Lacasse*, 365 Mass. 271, 273 (1974) ("Before a defendant is entitled to an instruction on self-defence, there must be evidence that he first took advantage of every opportunity to avoid the combat"). See *Commonwealth* v. *DeCaro*, 359 Mass. 388, 390 (1971). Thus, it might be said, and has often been held, that the right of self-defense ordinarily cannot be claimed by a person who provokes or initiates an assault unless that person withdraws in good faith from the conflict and announces his intention to retire. Annot., Withdrawal, after Provocation of Conflict, as Reviving Right of Self-Defense, 55 A.L.R.3d 1000, 1003

(1974). Similarly, it has been held that the right to claim self-defense may be forfeited by one who commits an armed robbery, even if excessive force is used by the intended victim or by any person intervening to prevent the crime or apprehend the robber. *Wilson* v. *State*, 473 P.2d 633, 636 (Alas. 1970). See *People* v. *Dillard*, 5 Ill. App. 3d 896 (1972) (robber has no right to kill his victim to save his own life).

We think the present cases present a situation in which the defendant had no right to claim the protection of the doctrine of self-defense with relation to his activities inside Parsons's apartment, and thus no right to an instruction on self-defense. It is undisputed that the defendant and his brother pursued Parsons down the stairs toward Parsons's apartment, and that Parsons had successfully retreated behind the closed door of his apartment. It thus cannot be disputed that, following their forcible entry, the brothers were trespassers in Parsons's home. The trespass was not merely technical, or made out of necessity, but was the result of an unbridled instinct to pursue and neutralize an adversary without regard to legal or physical barriers presented by the apartment door. But cf. 40 C.J.S. Homicide § 132 (1944); 55 A.L.R.3d, *supra* at 1016, § 6[d]. Cf. *Commonwealth* v. *Crowley*, 165 Mass. 569, 570 (1896). We do not think that the right of self-defense need extend so far as to justify pursuit onto the adversary's property.[7] "The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force

---

[7] This is not a case in which a trespasser, already on another person's property, is surprised by the owner and put in a position of peril. It has been held that "even a trespasser . . . has a right within reasonable bounds to repel an apparent dangerous attack in his necessary self-defense." *Womack* v. *State*, 36 Okla. Crim. 44, 49 (1927). This right arises after the trespasser "has availed himself of every safe means of retreat." *Id.* Accord, *People* v. *Dillard*, 5 Ill. App. 3d 896 (1972); *Thompson* v. *State*, 462 P.2d 299, 302 (Okla. Crim. 1969). We do not reach this issue since it is not presented by the facts of the cases before us.

between man and man. Any rule which promotes rather than inhibits violence should be re-examined." *Miller* v. *State*, 462 P.2d 421, 426 (Alas. 1969).[8]

2. By his third assignment of error the defendant claims that the judge erred by allowing the prosecutor to ask a defense witness whether she had testified at the defendant's District Court trial. The defendant's argument on this point is based on G. L. c. 278, § 23, which provides: "At the trial of a criminal case in the superior court, upon indictment or appeal, the fact that the defendant did not testify at the preliminary hearing or trial in the lower court, or that at such hearing or trial he waived examination or did not offer any evidence in his own defence, shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer." The only portion of this statute which is arguably relevant is the requirement that the prosecutor not comment on the failure of the defendant to "offer any evidence in his own defence" in the lower court.

The defense witness involved was the neighbor of the defendant and of Parsons. She testified in the Superior Court as to the appearance of the defendant and his brother as they stood outside Parsons's doorway, and testified with regard to a statement made by the defendant regarding Parsons's threat. See note 3, *supra*. The witness was not pivotal to the defendant's defense. Cf. *Commonwealth* v. *Paradiso*, 368 Mass. 205 (1975) (alibi witness). Without intimating an opinion on the consequences if the witness had been pivotal, we think it clear in this case that there was no basis on which the jury could reasonably infer that the defendant's failure to call this witness indicated a failure to offer any evidence in his defense in the lower court. Nor was this a case involving the cumulative effect of asking every one of

[8] See also Model Penal Code § 3.04, Comment at 19 (Tent. Draft No. 8, 1958): "It is obviously desirable to reduce so far as possible the situation in which there may be conflicting claims to use force, each of which might otherwise be justifiable or excusable on different grounds."

the defense witnesses whether he or she had previously tesified, as had been done by the prosecutor in *Commonwealth* v. *Morrison*, 1 Mass. App. Ct. 632, 635-636 (1973). We therefore are of opinion that the prosecutor's question to the defense witness in this case did not on its face violate any provision of § 23, nor could it have been reasonably construed in the circumstances to invite any of the impermissible inferences treated by the statute.

.                                            *Judgments affirmed.*