COMMONWEALTH *vs.* DANIEL J. CURTIS
(and a companion case[1]).

Suffolk. January 3, 1994. - May 2, 1994.

Present: WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* New trial, Appeal, Instructions to jury, Assistance of counsel. *Homicide. Assault and Battery. Wanton or Reckless Conduct. Self-Defense. Constitutional Law,* Assistance of counsel. *Error,* Harmless.

Discussion of the standards that generally apply in appellate review of a postappeal collateral attack on a conviction, that is, that apply in reviewing a judge's denial of a motion for new trial that raises nonconstitutionally based issues which could have been, but were not, raised in the direct appeal of the conviction. [623-626]

This court stated that the proper standard of appellate review of an issue, which had not been preserved for appeal at a criminal trial or pursued on the direct appeal of the conviction, that was raised in a motion for new trial and considered by the judge on the merits in denying the motion, is the same standard applicable to postconviction cases in which the judge denies a motion for new trial without reopening such issues, that is, whether there was "a substantial risk of a miscarriage of justice." [626-627]

At the trial of two defendants on murder indictments, there was no basis in the evidence for the judge to instruct the jury on involuntary manslaughter on the theories of misdemeanor battery causing death or wilful and reckless conduct leading to an unintentional death; moreover, there was no substantial risk of a miscarriage of justice in the judge's failure so to instruct, in light of his instructions on the lesser included offense of assault and battery, evidence of which the jury rejected. [627-628]

At the trial of two defendants on murder indictments, there was no basis in the evidence for the judge to instruct the jury on voluntary manslaughter on the theories of provocation or sudden combat; moreover, there was no substantial risk of a miscarriage of justice in the judge's failure so to instruct, in light of the jury's rejection of the defendants' claim that they had struck the victim only with their fists. [628-629]

---

[1]Commonwealth *vs.* Mark J. Giglio.

At the trial of murder indictments, there was no substantial risk of a mis-
carriage of justice in the judge's having given, on his own motion, a
supplemental instruction to the jury on a theory of manslaughter, where
the jury returned a verdict of guilty of murder in the second degree.
[629-631]

At a murder trial, where neither defendant was entitled to an instruction
on self-defense on the evidence presented, and both were convicted of
second degree murder, there was no prejudicial error in the judge's hav-
ing given instructions to the jury on voluntary manslaughter based on
the excessive use of force in self-defense. [631-633]

At a murder trial, there was no substantial risk of a miscarriage of justice
or prejudicial error in the judge's having given a supplemental instruc-
tion to the jury on his own motion in circumstances where the jury were
not deadlocked and the instruction was not directed to resolving a dead-
lock. [633]

At a murder trial in which the judge gave a supplemental instruction to
the jury in the absence of counsel of one of the defendants, where the
supplemental charge, relating to manslaughter, was more favorable to
the defendant than he was entitled on the evidence, any violation of the
defendant's constitutional rights was harmless beyond a reasonable
doubt and was not an automatic ground for the grant of a new trial; nor
did the violation of S.J.C. Rule 3:10 warrant reversal of the conviction
in the circumstances. [633-636]

INDICTMENTS found and returned in the Superior Court
Department on August 7, 1980.

Following the decision of this court in 388 Mass. 637
(1983), amended motions for a new trial were heard by *San-
dra L. Hamlin*, J.

The Supreme Judicial Court granted defendant Curtis's
request for direct appellate review and, on its own initiative,
also transferred the defendant Giglio's case from the Appeals
Court.

*Wendy Sibbison* for Daniel J. Curtis.

*John A. Amabile* for Mark J. Giglio.

*Paul B. Linn*, Assistant District Attorney, for the
Commonwealth.

WILKINS, J. On July 14, 1980, Michael Robinson was fa-
tally injured in a senseless attack in East Boston. On Decem-
ber 30, 1980, a jury found each defendant guilty of murder

in the second degree. This court affirmed those convictions on April 7, 1983. *Commonwealth* v. *Curtis*, 388 Mass. 637 (1983). On June 28, 1989, the defendants moved for a new trial on their own. Counsel was appointed. Amended motions for a new trial were filed, and on June 11, 1992, a judge other than the trial judge, who had retired, denied the motions and filed an explanatory memorandum. We granted Curtis's application for direct appellate review and transferred Giglio's appeal here on our own motion.

. Each issue that the defendants argue here in support of their challenges to the denial of their new trial motions could have been, but was not, argued on their direct appeals. The motion judge considered and rejected each argument on its merits. In this opinion, before discussing the defendants' various claims, we shall discuss the standard of review that an appellate court generally should apply in a postappeal, collateral attack on convictions such as are before us. But first, we set forth the basic facts of the case, borrowing heavily from our earlier opinion but interrupting that narrative at one point to provide facts bearing on issues argued in this appeal.

"On the evening of July 14, 1980, Michael Robinson, a sailor assigned to the U.S.S. Edson, a ship under repair in the General Shipyard in East Boston, was beaten by a group of East Boston youths on Border Street in a brawl between some sailors and the youths. Robinson died eight days later from head injuries inflicted in that beating. The incident which precipitated the fray is a matter of dispute. Lenny T. Curtis, the brother of the defendant, Daniel Curtis, testified at the trial that on that evening he had been jostled and struck by one of the black sailors sitting outside the General Shipyard fence when he refused to give him a cigarette. A sailor who testified stated that Curtis walked by undisturbed by the sailors.

"Curtis testified that after this alleged attack he told his friend, Eddie Colon, to '[g]o get my two brothers.' Colon rode his bicycle toward the Central Square area of East Boston and saw the defendant, Mark Giglio, and two other

friends, Michael Brulport and Joseph DeDominicis. Colon told them that 'Lennie needs some help down there. Some sailors [are] bothering him.' The four youths proceeded back to the place where the sailors were sitting.

"The youths approached the sailors and began making abusive comments. [Footnote omitted.] Some white sailors, including Michael Robinson, joined the other sailors and told the youths to leave the sailors alone. At this point, a red Cadillac automobile driven by Louis Lepore arrived at the scene and stopped. Daniel Curtis was a passenger in this car. Giglio ran over to the car and told Curtis that his brother Lenny Curtis had been beaten 'by those sailors over there.' According to Giglio's testimony, some of the youths then ran over to Lepore's car and began taking bats from the trunk.

"Sensing imminent trouble, the sailors began walking back to the shipyard. A gang of youths began chasing them. While fleeing, Michael Robinson either tripped and fell or was pushed to the ground. Two sailors, Seaman Tony Webb and Petty Officer Rickie Brandford, testified that they saw a number of the youths attack Robinson with baseball bats and a bottle. During the attack, Seaman Webb concentrated on one assailant. Webb later identified Daniel Curtis as this assailant from a police photo identification book, and subsequently repeated this identification at a District Court hearing, and at the trial. Eddie Colon, who had originally summoned the other youths, testified that he saw Mark Giglio strike Robinson with a bottle while Robinson was on the ground." *Commonwealth* v. *Curtis, supra* at 639-640.

Lenny Curtis testified that, when his brother, the defendant Daniel Curtis, went toward Robinson, Robinson "had a bottle in his hand raised up, and my brother went towards him, and Mr. Robinson was ready to hit my brother." Robinson swung the bottle at Curtis, who ducked. "[M]y brother came up with a punch" and backed off. The defendant Giglio testified that the group he was with advanced toward the sailors before Giglio punched Robinson in the face and ran away. He said he hit Robinson only with a fist.

"After attacking Robinson, the youths retreated and Webb and Brandford returned to help Robinson. The sailors found Robinson unconscious and bleeding from his head. . . . [T]he chief resident of neurosurgery [at Massachusetts General Hospital] . . . testified that the victim had sustained severe head injuries resulting in a minimum of ten fractures which were caused by at least five 'very considerable' blows. The object that caused the injuries, the doctor stated, 'was a blunt instrument wielded with an awful lot of force . . . many times.' These injuries, he stated, were consistent with those that could be inflicted with a baseball bat or a full bottle." *Commonwealth* v. *Curtis*, *supra* at 640.

1. Because the defendants' motions for a new trial were filed many years after the trial, presenting issues that could have been raised during their direct appeals, and because the Commonwealth may not be able to reassemble its case against the defendants and, even if it could, witnesses' memories would at best be considerably challenged, we are prompted to discuss and reassess the standards that we should apply in reviewing nonconstitutionally based issues of the type now argued to us. The desirability of finality in the adjudication of cases and the Commonwealth's interest in the fair and efficient administration of justice are factors to be considered along with the ever-present concern that justice not miscarry for the defendant. Our attention here is on the denial of a new trial motion filed after a conviction has received appellate review, and not with new trial motions considered before a conviction has been reviewed.

In direct review in a noncapital case,[2] an appellate court considers an issue not properly preserved for appellate review only on the "substantial risk of a miscarriage of justice" standard first expressed in those words in *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). Once the final decision on direct review has been made, any further challenge to the

---

[2]In so-called capital cases, review is under G. L. c. 278, § 33E (1992 ed.). What we say here does not necessarily apply to appellate review in such cases.

conviction must be made on a motion for a new trial. See Mass. R. Crim. P. 30, 378 Mass. 900 (1979).[3] Any nonconstitutionally based issue that could have been argued on direct appeal, and was not, may not be argued on appeal from the denial of a motion for a new trial unless the motion judge elected to consider the merits of the issue.[4] It has been a

[3]The business of collateral attack on criminal convictions has been a growth industry in recent decades, fueled in considerable measure by the recognition of new Federal constitutional principles that have been given retroactive effect, by the increased recognition of the ineffective assistance of counsel as a constitutionally based reason for seeking postconviction relief, and by an increasing judicial reluctance to ignore a claim of significant substantive error simply because some traditional procedural barrier stands in the way. The *Freeman* opinion and expansions of its concepts are responses to the increased concern about substantive fairness to defendants.

One result of the burgeoning of claims for postconviction relief has been an erosion of the significance of the requirement that issues be properly preserved for appeal and then resolved in a single appeal, perhaps combined with an appeal from the trial judge's denial of a motion for a new trial. Attempts at postconviction relief can be made years after the conviction and appeal when the trial judge may well no longer be sitting. Another result has been that trial judges find convictions reversed on issues that were never presented to them, and appellate judges receive repeated challenges to the same conviction.

[4]If a motion judge declines to reopen an issue and denies a motion for a new trial, the substantive issue becomes involved in an appeal from the denial of the motion for a new trial on "a substantial risk of a miscarriage of justice" standard. See *Commonwealth* v. *Walter*, 19 Mass. App. Ct. 82, 92 (1984), *S.C.*, 396 Mass. 549, 554 n.6 (1986). As a result of this opinion, appellate review of an issue presented on a motion for a new trial, filed after there has been appellate review of the conviction, will be on the same standard whether the motion judge considered the issue on the merits or not.

The issue might also come before an appellate court indirectly, in any event, if the defendant were to argue in support of a new trial motion that prior counsel was ineffective in a constitutional sense, either in not preserving the issue at trial or in not arguing it on appeal, or both. See, e.g., *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 457 n.11 (1990).

The Federal standard used in deciding the seriousness of the harm caused by counsel's error differs little, if at all, from the standard of a substantial risk of a miscarriage of justice. See *Strickland* v. *Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome"). But see

principle of long standing, however, that any issue that the motion judge considered on its substantive merits on a motion for a new trial and decided against a defendant will come before an appellate court as it would have if it had been raised on direct appeal. See *Commonwealth v. Mc-Grath,* 361 Mass. 431, 435 n.2 (1972); *Commonwealth v. Blondin,* 324 Mass. 564, 567 (1949), cert. denied, 339 U.S. 984 (1950); *Commonwealth v. Miranda,* 22 Mass. App. Ct. 10, 18-19 (1986). Until the *Freeman* case adopted an alternative standard of review, issues resuscitated by a motion judge could only be considered as if appellate rights had been fully preserved on that issue in the trial court. After the *Freeman* decision, an alternative exists.

We have not considered, since the *Freeman* case was decided, whether a defendant should be entitled to appellate review of an issue on a more favorable standard than that expressed in the *Freeman* case if, in a collateral attack on the conviction, the judge opened up the issue in denying a motion for a new trial but appellate review of that issue had not been preserved at trial. In other words, does a defendant who

---

*Lockhart* v. *Fretwell,* 113 S. Ct. 838, 844 (1993), applying the standard "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," and holding that there was no ineffective assistance of counsel where a death sentence was imposed and would not have been if counsel had not erred.

The standard that this court has used for testing the ineffectiveness of counsel, in a constitutional sense, is at least as favorable to a defendant as is the Federal standard (see *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 [1985]) and, although more detailed, seems not significantly different from the standard of a substantial risk of a miscarriage of justice. Our test is whether defense counsel's omission "likely deprived the defendant of an otherwise available, substantial ground of defence" (*Commonwealth* v. *Saferian,* 366 Mass. 89, 96 [1974]) or whether "better work might have accomplished something material for the defense" (*Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 [1977]) (These two cases bracket the date when this court changed its spelling of the word from "defence" to "defense").

Our view is that if an omission of counsel does not present a substantial risk of a miscarriage of justice in a situation such as this, there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution.

would have received review of an issue only on the *Freeman* standard, if he had raised it on direct review, receive the benefit of a more favorable standard on review (that is, as if his appellate rights had been preserved), if the motion judge considered that issue on the merits in denying the motion for a new trial? We think not.

We conclude that the proper standard for review in an appellate court of an issue considered on its merits by a new trial motion judge, after there has been appellate review of the conviction, is the same standard that we have said that motion judges should use in deciding whether to exercise their power of resuscitation. "The indiscriminate exercise of this power effectively circumvents the long-standing rule that issues not raised at trial or pursued in available appellate proceedings are treated as waived. *Commonwealth* v. *Grace*, 376 Mass. 499, 500 (1978). *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973), and cases cited. The trial judge's discretionary power to give relief from such a waiver by permitting such issues to be raised for the first time by a motion for a new trial should be exercised only in those extraordinary cases where, upon sober reflection, it appears that a miscarriage of justice might otherwise result." *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 (1980). If the motion judge was also the trial judge, we will give special consideration to that judge's decision to open an issue up in denying a motion for a new trial. See *Commonwealth* v. *Tucceri*, 412 Mass. 401, 409 (1992); *Commonwealth* v. *Ellison*, 376 Mass. 1, 16-17 (1978). In this appeal, in assessing the strength of the defendants' claims, we are in as good a position as the motion judge, who was not the trial judge and who heard no evidence. See *Commonwealth* v. *Haley*, 413 Mass. 770, 773 (1992); *Commonwealth* v. *Leaster*, 395 Mass. 96, 101-102 (1985).

A judge considering a motion for a new trial can decide that none of the issues presented has merit. If that is so, obviously no miscarriage of justice will have occurred. The motion judge in this case followed that course and concluded that the trial judge did not err in any of the ways that the

defendants asserted. Although that approach was appropriate as to certain issues raised by the motion for a new trial, it was not satisfactory in each instance.

2. We are now in a position to consider the defendants' several objections to the judge's jury instructions, both to omissions of instructions concerning the possibility of guilty verdicts on several theories of manslaughter and to a supplemental instruction that the judge gave on his own motion, after the jury had commenced deliberations.

The evidence did not require an instruction on involuntary manslaughter. There was no basis for giving such an instruction on the asserted theory that either or both of the defendants committed a misdemeanor battery which created a high degree of likelihood that substantial harm would result to the victim. See *Commonwealth* v. *Catalina*, 407 Mass. 779, 789 (1990). See also *Commonwealth* v. *Sneed*, 413 Mass. 387, 393-394 (1992). The defendants argue that the evidence would have warranted a finding that at most they struck the victim with their fists. The medical evidence showed that the cause of death was blunt instrument trauma, and thus death could not have been caused by striking with fists. Thus there was no evidence on which the jury could have found that either defendant was guilty of involuntary manslaughter on the theory of battery causing death. See *Commonwealth* v. *Bianco*, 388 Mass. 358, 363, *S.C.* 390 Mass. 254 (1983).

The defendants further assert that an instruction on involuntary manslaughter was warranted on the alternative theory than an unintentional death was caused during the commission of wanton and reckless conduct. See *Commonwealth* v. *Catalina, supra; Commonwealth* v. *Welansky*, 316 Mass. 383, 398-399 (1944). Here, the theory is that the jury could have found that the defendants only punched the victim but that punching the victim was a wanton and reckless act because there was an armed and hostile crowd, members of which were incited to more serious violence. We see no error, much less a substantial risk of a miscarriage of justice, from the omission of such a charge. The significant greater risk of injury that was arguably created by, and allegedly developed

from, striking the victim with fists was the possibility of inciting others to use baseball bats to strike the victim, a level of risk commensurate with the so-called third prong of malice and murder, not involuntary manslaughter. See *Commonwealth* v. *Sires*, 413 Mass. 292, 303 (1992) ("the defendant knew facts that a reasonably prudent person would have known, according to common experience, created a plain and strong likelihood that death would follow the act"). In other words, if the conduct of either defendant, or both of them, caused others to attack the victim as they allegedly did, the strong likely consequence of the defendants' conduct was murder, thereby negating wanton and reckless conduct as a basis for an involuntary manslaughter charge.

Even if, however, there may be some lingering theory supporting guilt of involuntary manslaughter not disposed of by what we have said, based on Curtis striking the victim only with his fist and thereby proximately causing his death (see *Commonwealth* v. *Askew*, 404 Mass. 532, 534 [1989]), there is no substantial risk of a miscarriage of justice from the omission of an involuntary manslaughter instruction. The judge told the jury in language perhaps more favorable to them than they deserved that, if either defendant had only punched the victim, he could be guilty only of simple assault and battery.[5] The jury must have believed that the defendants struck the victim with something more than their fists.

The question whether the evidence warranted an instruction on voluntary manslaughter beyond what the judge told the jury is more difficult. He did not instruct on the significance of provocation that may have caused a defendant to lose self-control in the heat of passion. See *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981), *S.C.*, 390 Mass. 722 (1984); *Commonwealth* v. *Walden*, 380 Mass. 724, 728 (1980). We see no provocation justifying such an instruction based on Curtis's hearing that a sailor had beaten his

---

[5]Giglio's claim for an involuntary manslaughter instruction depended, in the judge's view, on Curtis's conviction of involuntary manslaughter from which it could be argued that Giglio was guilty of involuntary manslaughter as a joint venturer.

brother. See *Commonwealth* v. *McGuirk*, 376 Mass. 338, 345-346 (1978), cert. denied, 439 U.S. 1120 (1979); *Commonwealth* v. *Leate*, 352 Mass. 452, 458 (1967).

There was evidence, however, that, when Curtis approached the victim, the victim tried to hit Curtis with a quart bottle full of liquor. Each defendant argues that a voluntary manslaughter instruction was required because he acted in the heat of passion induced by sudden combat. For sudden combat to be the basis for a voluntary manslaughter instruction, "[t]here must be evidence that would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth* v. *Walden, supra.* The victim's unsuccessful attempt to strike Curtis would not alone warrant a heat of passion voluntary manslaughter instruction, where it was Curtis who confronted the victim and Curtis who landed the first blow.[6] The jury's verdicts, rejecting as a practical matter any claim that the defendants struck the victim only with their fists, indicate in any event that there was no substantial miscarriage of justice in the failure to give such a heat of passion voluntary manslaughter instruction.

3. The defendants challenge the judge's supplemental jury instructions that he gave, on his own motion, after the jury

---

[6]Even when the victim strikes a blow, a heat of passion voluntary manslaughter instruction is not always required. See *Commonwealth* v. *Parker*, 402 Mass. 333, 344-345 (1988) (allegation of two blows struck by seventy-nine year old handicapped victim insufficient); *Commonwealth* v. *Garabedian*, 399 Mass. 304, 313-314 (1987) (scratches to face of male attacker by woman victim); *Commonwealth* v. *Brown*, 387 Mass. 220, 227 (1982) (evidence that victim choked husband with shirt insufficient, especially considering husband stabbed wife twenty-seven times); *Commonwealth* v. *Walden*, 380 Mass. 724, 726 (1980) (several blows by octogenarian victim and scratches from second victim insufficient to provoke stabbing and strangulation); *Commonwealth* v. *Zukoski*, 370 Mass. 23, 29 (1976) (no reasonable provocation for kicking forty-four year old victim as she lay on the ground and any threat from thrown glass had passed when defendant struck victim and knocked her down).

had been deliberating for approximately four hours.[7] The judge sought to explain how Giglio might be found guilty only of manslaughter.[8] He said that Giglio could be found guilty of manslaughter only if the jury first found Curtis guilty of manslaughter in the use of excessive force in self-defense and then found that Giglio was acting to aid Curtis in Curtis's self-defense effort. Counsel for Giglio objected to the interruption of the jury's deliberations and to the instruction that Giglio could not be found guilty of manslaughter unless Curtis were. No other objection was placed on the record to the substance of the supplemental charge. The judge acknowledged that the appellate rights of each defendant were saved. The jury returned with their verdicts about one-half hour after the judge's supplemental instruction.

---

[7]The instructions were given in the absence of counsel for the defendant Curtis, but in the presence of counsel for Giglio and for a third defendant, Louis J. Lepore, whom the jury found guilty of assault and battery. We discuss the possible significance of the absence of counsel for Curtis in the next section of this opinion.

[8]The significant portion of the supplemental instruction, not offered here as a model, was as follows: "Now, in case you are wondering about the manslaughter, remember that I told you that the only set of facts, if you believe them, that would warrant a manslaughter verdict would be the instance that I recalled to your mind if one of the witnesses — I think it was Curtis' brother testified that the sailor was the aggressor, that is, that he swung a bottle at Mr. Curtis first, and that; then, if Curtis used what you feel was unreasonable force in defending himself that it would warrant a verdict of manslaughter against Curtis. I told you that if you find that that happened, and that Giglio was helping him defend himself and used excessive force, but that it was the bat, not a bottle that caused the death, there could be a manslaughter verdict in the case of Giglio only if there is a manslaughter verdict in the case against Curtis, that is, the idea of the joint enterprise being that Giglio would have been aiding Curtis' self-defense effort, and then if Curtis used excessive force and was found guilty of manslaughter, then Giglio could also be found guilty of manslaughter. But if there is any manslaughter verdict in the Giglio case there has to be two of them. It could be manslaughter in the case against Curtis if you feel that he acted in self-defense legitimately, but used excessive force. But, if you find that Giglio wasn't helping him defend himself and hit the sailor with a bottle on his own in which case he would be guilty of assault with intent, or assault and battery, if you find that he wasn't helping Curtis defend himself, but was acting on his own."

On direct appeal, neither defendant challenged the judge's supplemental instructions on the ground that they were substantively wrong. Here, where appellate rights on an issue were saved at the trial level but the issue was not pressed on direct appeal, we will look at that issue on subsequent post-conviction review only to see if there was a substantial risk of a miscarriage of justice. There was none. The supplemental charge focused on a specific theory of manslaughter, hardly a prejudicial subject in light of what the jury decided. Curtis reasserts the need for alternative manslaughter instructions and objects to their omission from the supplemental charge, an issue that we have already disposed of.

The defendants also argue that the supplemental charge impermissibly shifted the burden of proof to them on the issues of self-defense and voluntary manslaughter based on the use of excessive force in self-defense.[9] "It is the rule that where the issue of self-defense has been sufficiently raised by the evidence, the defendant is entitled to an instruction which places on the Commonwealth the burden of disproving the factor of self-defense beyond a reasonable doubt." *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). If the Commonwealth fails to meet that burden, a defendant could be guilty of voluntary manslaughter if the Commonwealth proves beyond a reasonable doubt that a defendant used excessive force. *Commonwealth* v. *Boucher*, 403 Mass. 659, 663 (1989). The defendants' burden-shifting assertions have a constitutional foundation. See *Francis* v. *Franklin*, 471 U.S. 307 (1985); *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975); *Connolly* v. *Commonwealth*, 377 Mass. 527, 533-534 (1979).[10]

---

[9] We do not read the charge, as Curtis now claims, as saying that he could be found guilty of manslaughter only if Giglio were also found guilty of manslaughter.

[10] The defendants' claims of burden shifting derive from the statement of a single witness, Curtis's brother Lenny, who testified that he saw the victim swing a bottle of liquor at Curtis. The judge took the view that the evidence required an instruction on manslaughter based on the excessive use of force in self-defense. In his main instruction to the jury, the judge had properly defined proof beyond a reasonable doubt and told the jury

The defendants' arguments fail because neither was entitled to any instruction on self-defense. Thus, whatever the judge said about self-defense, and the use of excessive force in self-defense, was more favorable to the defendants than they deserved and could not have prejudiced their positions.[11] An instruction on self-defense is required in a homicide case if the evidence most favorable to a defendant warrants a reasonable doubt whether "the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case. *Commonwealth* v. *Harris*, 376 Mass. 201, 208 (1978), and cases cited." *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980).

There was no evidence that Curtis or Giglio availed himself of all proper means to avoid physical combat. As we have said, the sailors, sensing trouble, began to walk back to the shipyard. A gang of youths chased them. Curtis went toward the victim who, according to Curtis's brother, was ready to hit Curtis. These events occurred in an open street. There was no evidence that raised a reasonable doubt whether either defendant could have avoided physical combat. See *Commonwealth* v. *Naylor*, 407 Mass. 333, 335

---

that the use of reasonable force to protect oneself was no crime at all. He had then explained that the use of excessive force in self-defense was manslaughter, and stated that the Commonwealth had to prove that a defendant did not act in self-defense and that, if self-defense was not proved, the Commonwealth would have to prove that a defendant used excessive force in self-defense to be guilty of manslaughter. As to all this, neither defendant objected nor now complains. In the supplemental instruction, the judge told the jury that self-defense was an issue in the case only if they believed the testimony of Curtis's brother that the victim, holding a bottle, was an aggressor and swung the bottle at Curtis.

[11]Of course, if there was no right to self-defense, a voluntary manslaughter instruction based on the use of excessive force in self-defense would not be appropriate either.

(1990) (person who provokes confrontation may not claim right to self-defense unless he withdraws in good faith and announces his intention to retire); *Commonwealth* v. *Epsom*, 399 Mass. 254, 258 (1987) (among other things, no evidence that events could be viewed as raising doubt whether defendant was without reasonable means of escape); *Commonwealth* v. *Lacasse*, 365 Mass. 271, 273 (1974) (self-defense instruction warranted only if there is some evidence that defendant had no opportunity to avoid combat). Cf. *Commonwealth* v. *Maguire*, 375 Mass. 768, 772-773 (1978) (self-defense does not extend to justify pursuit onto adversary's property).

Giglio's remaining challenge to the supplemental instruction is largely directed to the giving of the charge when there was no indication that the jury were deadlocked. The supplemental charge was not, however, directed to resolving a deadlock in the jury's deliberations. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87 (1973). Giglio does not argue here that the judge erred in stating that Giglio could be guilty of manslaughter only if the jury found that Curtis was guilty of manslaughter as well.

The defendants' challenges to the supplemental instructions do not present a substantial risk of a miscarriage of justice or a violation of constitutional right warranting a new trial.[12]

4. Finally, we come to the argument that the judge violated Curtis's rights by giving the supplemental jury instructions in the absence of Curtis's counsel. The jury began deliberations at approximately 10:30 A.M. on December 30, 1980. At 2 P.M. that day the judge conducted a lobby confer-

---

[12]Because the various alleged errors discussed to this point either were not errors at all or did not create a substantial risk of a miscarriage of justice, we need not separately discuss claims of ineffectiveness of trial counsel or prior appellate counsel in their handling (or mishandling) of these issues. See note 4 above.

We have assumed in the defendants' favor that neither waived his challenges to the supplemental instructions by failing to make his various arguments on direct appeal.

ence in the presence of counsel for the other defendants. The judge initiated the conference by stating on the record that "we have been trying to locate [Curtis's counsel] for at least twenty minutes and we can't locate him." The discussion then proceeded off the record. At 3:14 P.M. the judge gave the supplemental charge with all defendants and counsel for the defendants other than Curtis present, after which there was an off-the-record discussion in the judge's lobby. Counsel for the other defendants objected to the instruction, and the judge permitted them to do so on behalf of Curtis.

We shall assume, without deciding, that Curtis's appellate counsel did not waive the issue of the giving of the charge in the absence of counsel, although that seems to be what happened. In various circumstances, we have treated a constitutional issue as waived when it was not argued at the earliest reasonable opportunity, or at least at an earlier opportunity. See *Commonwealth* v. *Lowe*, 405 Mass. 1104, 1104-1105 (1989); *Commonwealth* v. *Deeran*, 397 Mass. 136, 139 (1986); *Commonwealth* v. *Pisa*, 384 Mass. 362, 365-366 (1981).[13]

We shall further assume, again without deciding, that, if there was a waiver in not arguing the point, Curtis's appellate counsel failed to meet the standard of performance constitutionally required of him. We have already said, however, that the supplemental charge was not prejudicial to Curtis and that the giving of it did not create a substantial risk of a miscarriage of justice. The charge focused on the possibility of a verdict more favorable to Curtis than he was entitled to. An ineffective assistance of counsel argument would not,

---

[13]Massachusetts Rules of Criminal Procedure 30 (c) (2), 378 Mass. 900 (1979), provides that all grounds for relief in a motion for a new trial not raised in a defendant's original or amended motion "are waived unless the judge in his discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion." The same waiver principle applies to the failure of a defendant to raise an available issue on appeal.

It does not appear that Curtis's argument is founded on newly developed principles or on some other ground that reasonably explains the failure to raise the issue in the initial appeal.

therefore, help Curtis. We shall also assume, without deciding, that the judge by acting on the issue opened it up as a constitutionally based one, although that conclusion is doubtful.[14]

If the giving of the supplemental instruction was a constitutionally based error and the violation is not an automatic ground for reversal, the Commonwealth has the burden to show that the violation was harmless beyond a reasonable doubt. See *Sullivan* v. *Louisiana*, 113 S. Ct. 2078, 2082 (1993) (defective reasonable doubt instructions cannot be harmless); *Arizona* v. *Fulminante*, 499 U.S. 279, 306-307 (1991) (harmless error analysis may be applied to most constitutional errors); *Satterwhite* v. *Texas*, 486 U.S. 249, 256-257 (1988) (automatic reversal would be required for Sixth Amendment violations that pervade entire proceeding); *Commonwealth* v. *Owens*, 414 Mass. 595, 603-604 (1993); *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991). As to any violation of constitutional rights protected by the Constitution of the Commonwealth (such as the right to counsel under art. 12 of the Declaration of Rights), we would reach

---

[14]If there has been appellate review of a conviction or if there has been a prior motion for a new trial, a judge considering a motion for a new trial should first exercise discretion as to whether to deal with the substance of any issue presented. See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 230-231 (1973), for a case in which a motion judge, expressly and with reasons, declined to exercise his discretion to open up an issue. We do not say that a judge should never consider a waived issue on its merits, but we do say that the decision to do so should be based on a disclosed exercise of discretion. There is no such disclosure here.

The motion judge disposed of the absence of Curtis's counsel in one sentence. "The fact that this [supplemental] instruction was given *sua sponte* and without Curtis' attorney being present does not require a new trial. See *Commonwealth* v. *Venuti*, 315 Mass. 255, 261 (1943)." The *Venuti* opinion was issued more than fifty years ago and before the substantial advancement of the right of criminal defendants to the effective assistance of counsel. The court in its *Venuti* opinion stated simply that "[f]urther instructions may be given, even though counsel are not in attendance." *Id.* The motion judge made no reference to the constitutional requirement, more recently developed, that a defendant is entitled to counsel at every critical stage of a criminal proceeding. See *United States* v. *Cronic*, 466 U.S. 648, 659 (1984).

our own conclusions as to which constitutional violations are per se grounds for reversal of a conviction. The supplemental charge was more favorable to Curtis than he was entitled to. Thus it could not have harmed him. We conclude, therefore, that the giving of the instruction was not automatically a ground for granting a new trial and that any constitutional violation was harmless beyond a reasonable doubt.[15]

For the same reason, we reject Curtis's argument that he is entitled to a new trial because the judge violated S.J.C. Rule 3:10, as amended, 370 Mass. 911 (1976), in charging the jury in the absence of counsel. While we agree that Rule 3:10, concerning the right to counsel and the appointment of counsel for indigent defendants, was violated, it does not follow that reversal of the conviction is the only possible consequence of that violation. This is not, for example, a case in which a defendant, in the absence of counsel, acknowledged guilt by waiving his appeal for a trial de novo. See *Cardran* v. *Commonwealth*, 356 Mass. 351 (1969) (waiver of appeal vacated); *MacDonnel* v. *Commonwealth*, 353 Mass. 277, 281 (1967) (conviction based on guilty plea vacated when entered without compliance with Rule 3:10).

5. The order denying the motion of the defendant Mark J. Giglio for a new trial and denying the motion of the defendant Daniel J. Curtis for a new trial is affirmed.

*So ordered.*

---

[15]In *Commonwealth* v. *Frongillo*, 359 Mass. 132, 139 (1971), the judge declined to answer three specific questions from the jury and, apparently in the absence of defense counsel, told the jury to rely on the evidence in the case and not to speculate as to facts not before them. The court said that there was no prejudicial error.