COMMONWEALTH vs. KARTER REED.

Bristol. February 2, 1998. - March 18, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Instructions to jury. *Self-Defense. Homicide. Malice.*

At a murder trial, certain testimony of a witness, which the Commonwealth conceded was mistaken and which was struck from evidence by the judge, did not constitute grounds for reversal of the defendant's conviction. [101-102]

In a murder case, the evidence did not warrant an instruction on self-defense [102-103], and the judge's remark to the jury that "no issues of lawful self-defense" existed was entirely appropriate [103].

At a murder trial there was no error, much less a substantial risk of a miscarriage of justice, in the judge's refusal to instruct on battery (involuntary) manslaughter where no view of the evidence would permit the conclusion that the victim's death stemmed from a nonfelonious battery. [103-104]

At a murder trial the judge's instructions to the jury on second prong malice were, on the whole, proper, and the judge's instructions on third prong malice were correct: there was no error and no substantial risk of a miscarriage of justice. [104-107]

INDICTMENT found and returned in the Superior Court Department on June 9, 1994.

The case was tried before *Charles J. Hely*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*James F. McNiff, II,* for the defendant.

*Kevin Connelly,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A jury convicted the defendant of murder in the second degree.[1] We granted his application for direct appellate review. On appeal, he contends that the judge committed revers-

[1]The defendant, who was sixteen years old at the time of the incident, was initially charged as a juvenile. From June, 1993, to January, 1994, hearings were held, pursuant to G. L. c. 119, § 61 (1994 ed.) (since repealed), on whether to transfer the defendant to the Superior Court for trial as an adult. On May 3, 1994, a Juvenile Court judge determined that such a transfer was ap-

ible error by (1) failing adequately to instruct the jury regarding the mistaken testimony of one witness; (2) failing to instruct the jury on self-defense; (3) telling the jury during his instructions that there was "no issue of self-defense"; (4) failing to instruct the jury on battery manslaughter; (5) incorrectly defining "grievous injury" in response to a jury question about second prong malice; and (6) instructing the jury that, for purposes of third prong malice, the defendant's conduct was to be assessed in light of the "reasonably prudent person" standard. For the reasons set forth below, we reject the defendant's claims and affirm the conviction.

*Facts.* We set forth the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with certain issues raised. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994); *Commonwealth* v. *Burnett*, 417 Mass. 740, 741 (1994). On the morning of April 12, 1993, the defendant and two companions entered Dartmouth High School looking for the victim's friend, with whom they had previously been feuding. The defendant, who was not enrolled at the school, carried the handle of a wrench and a knife in his pants pocket. On entering the building, the three made their way to a classroom where they believed the victim's friend would be found. A class was being conducted in the room. While the defendant and one companion remained in the doorway, the defendant's other companion entered the classroom wielding a baseball bat, and, after briefly exchanging words with the victim, began chasing him around the classroom with the bat. The teacher was able to bring this attack to a halt, but amid the commotion, the defendant entered the classroom and stabbed the victim in the stomach. Immediately thereafter, the defendant was restrained by other teachers who had entered the classroom. The victim died soon after as a result of the stab wound.

1. *Mistaken testimony.* At trial, a student who witnessed the attack testified in response to a question from the judge that the defendant threatened the victim after stabbing him.[2] At a sidebar conference after this testimony was given, the Com-

---

propriate.

[2]After testifying that he heard "threats being made," the witness had the following exchange with the judge:

THE JUDGE: "No further questions. All right. I have a question. What threats

monwealth conceded that the witness was mistaken in this regard. The defendant now claims that the jury's exposure to this testimony requires reversal. We disagree.

Following the sidebar conference, the judge gave the jury an immediate and forceful curative instruction that the witness's remarks "are stricken from the evidence and are not to be considered by the jury. They are not part of the case." See *Commonwealth* v. *Andrews*, 403 Mass. 441, 449 (1988). We must assume that the jury heeded these instructions. *Commonwealth* v. *LeFave*, 407 Mass. 927, 940 (1990). Moreover, the fact that the defendant failed to object to the judge's curative instruction "suggests that [the original] objection was resolved to his satisfaction." *Commonwealth* v. *Benjamin*, 399 Mass. 220, 224 (1987). See *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 881 n.19 (1984). Consequently, no reversal is required.

2. *Self-defense.* The defendant next contends that the judge committed reversible error by (1) refusing to instruct the jury on self-defense and then by (2) telling the jury that there were "no issues of lawful self-defense." We reject both these claims, but will address each individually.

With respect to the first, "[i]t is the rule that where the issue of self-defense has been sufficiently raised by the evidence, the defendant is entitled to an instruction which places on the Commonwealth the burden of disproving the factor of self-defense beyond a reasonable doubt." *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978). To raise the issue sufficiently, the evidence viewed in the light most favorable to the defendant must permit a reasonable doubt whether "the defendant (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the

did you hear, who made them, and what was said?"

THE WITNESS: "I heard threats to [the victim and his friend]."

"   . . .

THE JUDGE: "By whom?"

THE WITNESS: "By [the defendant's companion] and [the defendant]."

THE JUDGE: "Was this before that blow that was struck that you —"

THE WITNESS: "After."

circumstances of the case." *Commonwealth* v. *Curtis*, 417 Mass. 619, 632 (1994), quoting *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980).

In the present case, there was no evidence of any of the required factors. Instead of suggesting that the defendant sought to avoid contact with the victim, *Commonwealth* v. *Epsom*, 399 Mass. 254, 258 (1987), the evidence tended to show that the defendant initiated the confrontation. He testified himself that he moved toward the victim with the knife in his hand. Similarly, other witnesses testified that it was the defendant who approached the stationary victim and stabbed him in the stomach. Nor was there evidence suggesting that the defendant was in imminent danger of death or serious bodily harm. Although he testified that he became "scared" immediately before the stabbing, the defendant also conceded that no person had actually "bump[ed]" or "push[ed]" him, and that he saw no one even coming toward him. The fact that others in the room may have been voicing threats of future harm does not, in our view, warrant an instruction on self-defense with respect to the attack on the victim. *Commonwealth* v. *Glass*, 401 Mass. 799, 808 (1988) ("self-defense may be raised only as to a victim who assaulted or threatened the defendant"). It follows from the foregoing that any degree of force, and especially a knife attack on an unarmed victim, was more force than was reasonably necessary in the circumstances.

For similar reasons, the judge's remark to the jury that "no issues of lawful self-defense" existed was entirely appropriate. "The method and extent of a jury charge is within the discretion of the trial judge." *Commonwealth* v. *Carrion*, 407 Mass. 263, 269 (1990). While a judge may not "invade the province of the jury," *Commonwealth* v. *McDuffee*, 379 Mass. 353, 364 (1979), where there was no evidence raising the issue of self-defense, a judge may so inform the jury. *Commonwealth* v. *Carrion, supra* at 268-269 (affirming conviction where judge told jury that "the evidence [does] not support any inference that [the victim] started the trouble; that would be beyond reasonable inference and as a matter of law, speculation and conjecture"). See *Commonwealth* v. *Conley*, 34 Mass. App. Ct. 50, 56, 58 (1993) (judge's statement that "there was no evidence of a right or excuse" was appropriate because he "was not required to give an instruction on self-defense").

3. *Battery manslaughter instruction*. The defendant also

maintains that the judge erred in refusing to instruct the jury on battery manslaughter. Because the defendant failed to object at trial, our review is limited to whether the judge's refusal gave rise to a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). It did not.

There are two aspects of involuntary manslaughter. One involves wanton and reckless conduct causing death. *Commonwealth* v. *Sneed*, 413 Mass. 387, 393 n.4 (1992). The other concerns an unintentional killing from "a battery not amounting to a felony, when the defendant knew or should have known that the battery he was committing endangered human life." *Commonwealth* v. *Fitzmeyer*, 414 Mass. 540, 547 (1993), quoting *Commonwealth* v. *Sires*, 413 Mass. 292, 302 n.10 (1992). See *Commonwealth* v. *Pierce*, 419 Mass. 28, 33 (1994). An instruction on battery manslaughter is required where there is evidence that the victim died as a result of a battery not amounting to a felony. *Commonwealth* v. *Donovan*, 422 Mass. 349, 353 (1996). In the present case, no view of the evidence permits the conclusion that the victim's death stemmed from a nonfelonious battery. All the evidence adduced at trial indicates that the defendant attacked the victim with a knife, which is a deadly weapon. Such an attack is a felony in this Commonwealth. See *Commonwealth* v. *Donovan, supra* (no battery manslaughter instruction required where "[t]he victim died from a stab wound to the heart — a felonious assault — and not a punch to the face"); *Commonwealth* v. *Sires, supra,* quoting *Commonwealth* v. *LePage*, 352 Mass. 403, 419 (1967) (where "[t]he battery here was with a dangerous weapon," to wit a gun, "there was no evidence . . . that the defendant[] [was] not engaged in the commission of a felony when the killing occurred"). For this reason, the judge's failure to give a battery manslaughter instruction did not constitute error, much less a substantial risk of a miscarriage of justice.

4. *Malice instructions.* Finally, the defendant argues that the judge's instructions on malice require reversal because they (1) incorrectly defined "grievous bodily injury" for purposes of second prong malice and (2) applied the wrong "reasonably prudent person" standard for purposes of third prong malice.

The judge's instructions on second prong malice were correct. During his main charge to the jury, the judge twice stated that "[m]alice aforethought means the intent to kill or the intent

to cause [g]rievous bodily harm to another person." In so doing, he followed the preferred instructions on second prong malice. See *Commonwealth* v. *Boucher*, 403 Mass. 659, 662 n.2 (1989); *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980). Later, in response to a question from the jury, the judge further instructed that "grievous bodily harm" means "severe injury to another person's body." Because the defendant failed to object to this supplemental instruction at trial, we review only to determine whether, in light of the entire charge, the supplemental instruction created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). There was no error and therefore no substantial risk of a miscarriage of justice.

The judge's supplemental instruction accurately conveyed to the jury that the injury intended must be of a serious nature. Indeed, "severe" is in many contexts synonymous with both "grievous and "serious."[3] See *Commonwealth* v. *Sneed, supra* at 389, 392 (approving use of "serious injury" language, but rejecting judge's instruction that malice included intent "to inflict injury"); *Commonwealth* v. *Lacy*, 371 Mass. 363, 372 (1976) (approved use of "serious bodily injury" in second prong malice instruction). Given that "[w]e look to the entire charge, *Commonwealth* v. *Torres*, 420 Mass. 479, 490 (1995), and do not require trial judges to use any particular words in their instructions so long as they convey the legal concepts properly," *Commonwealth* v. *Trapp*, 423 Mass. 356, 359, cert. denied, 519 U.S. 1045 (1996), the judge's instructions on second prong malice on the whole were proper.[4]

Likewise, the judge's use of the "reasonably prudent person"

---

[3]Webster's New Collegiate Dictionary 1078 (9th ed. 1991) defines "severe," in part, as "inflicting pain or distress: grievous" and "of a great degree: serious."

[4]The defendant urges us to define grievous bodily injury as "one that any reasonable person would see to pose a plain and strong likelihood of death in the circumstances known to the defendant." This characterization would impermissibly intermingle the concepts involved in second prong malice with those governing third prong malice. See *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987) (in defining third prong malice, stating that "malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act"). Indeed, in recent decisions, we have sought to prevent any intermingling of the concepts of second and third prong malice. See *Commonwealth* v. *Brooks*, 422 Mass. 574, 580 (1996); *Commonwealth* v. *Morgan*,

standard in his third prong malice instructions was correct.[5] "When deliberating as to the third prong of malice, a jury must consider (1) the nature and extent of the defendant's knowledge of the circumstances at the time he acted (subjective component); and (2) whether, in the circumstances known by the defendant, a *reasonably prudent person* would recognize that the defendant's conduct would create a plain and strong likelihood of death (objective component)" (emphasis added). *Commonwealth* v. *Mello*, 420 Mass. 375, 389-390 (1995). While we have held that subjective conditions such as intoxication or mental impairment may be relevant in determining a defendant's knowledge at the time of the killing, *Commonwealth* v. *Delaney*, 418 Mass. 658, 665 (1994); *Commonwealth* v. *Sama*, 411 Mass. 293, 297 (1991), we have remained steadfast in our view that the latter element of third prong malice is a purely objective one. See *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995); *Commonwealth* v. *Eagles*, 419 Mass. 825, 834-835 (1995). See also *Commonwealth* v. *Pierce*, 419 Mass. 28, 36 (1994). It aims to quantify the risk of a defendant's actions in light of what "a reasonably prudent person would have known . . . according to *common experience*" (emphasis added). *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987), citing *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899). Therefore, any consideration of subjective factors, such as the defendant's age, is misplaced. Contrary to the defendant's assertions, the fact that he may have been only sixteen years old at the time of the killing is irrelevant where, pursuant to G. L. c. 119, § 61 (1994 ed.), he was properly transferred to the Superior Court for trial as an adult. See G. L. c. 119, § 61 (cases of juveniles transferred to Superior Court "shall thereafter proceed according to the usual course of criminal proceedings"). See also *Commonwealth* v. *Costello*, 392 Mass. 393, 405 (1984) ("find[ing] no precedent to support the defendant's contention that the judge was required to direct the jury explicitly that age was to be considered as a mitigating factor in their deliberations"). For these reasons, the

422 Mass. 373, 381 (1996); *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995).

[5]The judge stated: "Malice may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act."

Commonwealth *v.* Reed.

judge's use of the "reasonably prudent person" standard in his third prong malice instructions was correct.

*Judgment affirmed.*