## COMMONWEALTH *vs.* GLENN E. HART.

Plymouth. November 3, 1998. - January 7, 1999.

Present: WILKINS, C.J., LYNCH, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Capital case. *Self-Defense. Evidence,* Self-defense.

Evidence at the trial of two indictments for murder did not warrant an instruction on self-defense, where it demonstrated that the defendant failed to use reasonably available means of escape before resorting to the use of deadly force. [616]

At a murder trial, there was no error in the judge's instruction to the jury on reasonable doubt. [616]

At a criminal trial, the prosecutor properly argued a permissible inference from the evidence. [616]

INDICTMENTS found and returned in the Superior Court Department on March 1, 1994.

The cases were tried before *Patrick F. Brady,* J.

*Robert J. Carnes* for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney (*Paul C. Dawley,* Assistant District Attorney, with her) for the Commonwealth.

WILKINS, C.J. The defendant appeals from his convictions of (1) murder in the first degree of Michael Moore, (2) murder in the second degree of Pierre Pauleus, (3) armed assault with intent to murder on Murray Moore, and (4) unlawful possession of an altered firearm. The evidence showed that the defendant shot the victims in the Rockland apartment of a Sherry Curtin on the night of February 11, 1994. She and the surviving victim knew the defendant and identified him as the person who entered the apartment and shot the victims. The evidence that the defendant was the shooter was overwhelming.

Apart from two insubstantial claims of error that we shall discuss briefly, the defendant's appeal challenges the judge's refusal to instruct the jury on self-defense. He claims that the evidence required the giving of a self-defense instruction and

argues that, if such an instruction had been given, the jury might have returned a verdict of manslaughter or even of not guilty.

The evidence, which for the purpose of assessing this argument we must review in the light most favorable to the defendant (*Commonwealth* v. *Pike, ante* 393, 395 [1998]), did not require the giving of the requested self-defense instruction. If deadly force is used, a self-defense instruction must be given only if the evidence permits at least a reasonable doubt that the defendant reasonably and actually believed that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force. See *id.*; *Commonwealth* v. *Reed,* 427 Mass. 100, 102-103 (1998); *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). Before using deadly force, a defendant must have used all proper means to avoid physical combat. See *Commonwealth* v. *Reed, supra.*

Approximately one week before the shootings the defendant, Michael Moore, and Murray Moore committed an armed robbery of three men who were walking along a street in Brockton. The defendant drove the automobile and the Moores robbed and beat the victims. Among the items seized were the jackets of the three men, including a Boston Red Sox jacket. The defendant retained possession of that jacket.

Earlier on the night of the shootings, Michael Moore and the defendant argued at Curtin's apartment over the stolen Red Sox jacket. The argument escalated into a fight in which Murray Moore (Michael's cousin) and Pauleus joined. The defendant left the apartment, announcing that he would get the jacket. As he did so, Michael and Murray Moore each shouted that he was going to kill the defendant. The defendant walked toward his home which was located nearby. The defendant got the Red Sox jacket and started back to Curtin's apartment. His girl friend met him and tried unsuccessfully to stop him from returning to the apartment.

Approximately ten minutes after he had left the apartment, the defendant knocked on the apartment door. Curtin let him in. The defendant was carrying the jacket. Michael reached for the jacket. The defendant then shot Michael three times and Pauleus once. There was no evidence that either of these victims was armed. Murray had been in the bathroom when the defendant returned to the apartment. He heard the shots, left the bathroom, and fled through the kitchen toward the bedrooms. The defendant shot Murray in the arm.

Although the defendant may have believed (perhaps not reasonably) that he was in imminent danger of being killed or seriously injured, he did not avail himself of all proper means to avoid physical combat before resorting to the use of deadly force. See *Commonwealth* v. *Barros*, 425 Mass. 572, 576-577 (1997), and cases cited. There was no evidence that the defendant was left without any reasonable means of escape. See *Commonwealth* v. *Pike, supra* at 398-399; *Commonwealth* v. *Epsom*, 399 Mass. 254, 258 (1987). Indeed, the defendant had the opportunity to retreat and did so, but only to return a few minutes later armed with a loaded handgun. See *Commonwealth* v. *Medina*, 20 Mass. App. Ct. 258, 260 (1985). There were obvious alternatives available to the defendant, such as calling the police or simply remaining at his home. See *Commonwealth* v. *Maguire*, 375 Mass. 768, 771 (1978). Without consideration of any other aspect of the question whether a self-defense instruction was required, we hold that the evidence did not warrant the giving of such an instruction because the defendant unquestionably failed to use reasonably available means of escape.

The defendant's other arguments lack persuasive force. The defendant did not object at trial to the judge's instruction on reasonable doubt but does so now. We conclude that the instruction, particularly the explanation of what "moral certainty" means, was not erroneous. The judge followed the substance of the traditional instruction from *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). There was no error. See *Commonwealth* v. *Andrews*, 427 Mass. 434, 444-445 (1998); *Commonwealth* v. *Pinckney*, 419 Mass. 341, 345 (1995). Because there was no error in the reasonable doubt instruction, there was no substantial likelihood of a miscarriage of justice that would warrant relief even in the absence of an objection at trial.

In his closing argument, the prosecutor said that Michael and Murray Moore were the defendant's friends and "his criminal associates." This statement was a permissible inference from the evidence. Indeed, in his closing argument, defense counsel was critical of the Moores' violent criminal behavior.

There is nothing in the record or in the arguments on appeal that prompts us to exercise our authority under G. L. c. 278, § 33E.

*Judgments affirmed.*