Gants, J.
This Court has learned that the Supreme Judicial Court intends to hear the Commonwealth’s petition for relief pursuant to G.L.c. 211, §3 without the benefit of a transcript of the proceedings that set forth in great detail this Court’s reasons for instructing the jury as it did regarding the law of voluntary manslaughter. Since the Single Justice will not be able to read those reasons from the transcript, this Court will attempt, in the short time provided, to set forth its reasons in this Memorandum.[1]
This Court carefully reviewed the Model Jury Instructions regarding voluntary manslaughter and, reluctantly, decided not to furnish that language to the jury. This Court noted that the Model Instructions were recommended but not required; the Introduction to the Model Instructions specifically state that a judge may depart from the instructions if he “finds that a different instruction would more accurately or clearly state the law.” The reasons why I exercised my discretion to depart from the language of the Model Instructions regarding voluntary manslaughter are threefold.
First, the Model Instructions do not define the intent needed to constitute voluntary manslaughter with enough precision to explain adequately to a jury what state of mind must be found beyond a reasonable doubt. The Model Instructions declare:
to prove this crime [of voluntary manslaughter], the Commonwealth must prove beyond a reasonable doubt the following elements:
1. That the defendant intentionally inflicted an injury or injuries likely to cause death upon the deceased which caused his death.
2. That the defendant acted unlawfully.
An unlawful killing is a killing done without excuse. Not all killings are unlawful. A killing may be excusable, for example, in the case of self-defense, defense of another, or accident.
Model Instructions at 36. That is all that is suggested to be told to a jury who must determine whether a defendant is guilty of voluntary manslaughter. No detail is provided as to the element of intent. Specifically, it is not clear from this instruction whether the *741 defendant must intend that the injuries he causes be likely to cause death, whether he must know when he inflicts them that they are likely to cause death, whether a reasonable person must know that they are likely to cause death, or whether it is sufficient for this jury to find that the injury was likely to cause death, even if neither he nor a reasonable person would have known that. All of these issues have been carefully examined over the years in establishing the three prongs of intent for second degree murder; all are left ambiguous by this model instruction.
Second, the Model Instructions do not adequately explain to a jury how the state of mind required for voluntary manslaughter differs from that needed to prove involuntary manslaughter. This Court instructed the jury in accordance with the Model Instruction regarding involuntary manslaughter. (A copy of that part of my instructions is attached as Appendix 1 to this Memorandum.) Under those Model Instructions, the jury is told that it may find the defendant guilty of involuntary manslaughter by wanton or reckless conduct if it finds that he intended an act that created a high degree of likelihood that substantial harm will result to another. The jury is also told that it may find involuntary manslaughter as a result of a battery if it finds that he intended a battery which, “under the circumstances, the defendant knew or reasonably should have known endangered human life.” The distinction between the Model Instructions on intent for voluntary manslaughter and those regarding intent for the two alternatives of involuntary manslaughter is too elusive to ask a jury to decipher.
Third, the instructions I gave conform with the law as declared by the Supreme Judicial Court and the spirit of the balance of the Model Instructions. I found it far clearer and in keeping with the law set forth by the Supreme Judicial Court to inform this jury that, to convict on voluntary manslaughter, it must find one of the three prongs of intent set forth in the Model Instructions for second degree murder. The Commonwealth errs when it declares that my instructions were identical to those for second degree murder. An essential element the Commonwealth must establish to prove second degree murder, as set forth in the Model Instructions at 29, is the absence of certain mitigating circumstances, including heat of passion. This element is not required to prove voluntary manslaughter. Commonwealth v. Acevedo, 427 Mass. 714 (1998). The Commonwealth also errs when it contends that I effectively required the jury to find malice in order to find voluntary manslaughter. An element of malice is the absence of reasonable provocation. Id. at 715-16 (“Malice and adequate provocation are mutually exclusive”). Since the jury was not told that it must find beyond a reasonable doubt the absence of mitigating circumstances, it did not need to find the malice necessary to find second degree murder.
Moreover, these instructions conform to the Model Instructions at 32, which suggest instructing the jury, when second degree murder is charged, that if “the Commonwealth has not proved beyond a reasonable doubt the absence of [certain mitigating circumstances] then you must find the defendant not guilty of murder and you would be justified in finding the defendant guilty of voluntary manslaughter.” I found that it is far clearer to instruct the jury, even when second degree murder was not charged, that it must find one of the three prongs of intent. This provides a far clearer delineation of the various forms of homicide. In short, first degree murder is defined as one of the three prongs of intent, the absence of mitigating circumstances, and either deliberate premeditation or extreme cruelty or atrocity. Second degree murder is defined as one of the three prongs of intent and the absence of mitigating circumstances. Voluntary manslaughter is defined as one of the three prongs of intent alone. Involuntary manslaughter is defined as an intentional act that, under the circumstances, the defendant knew or reasonably should have known endangered human life. Not only does this instruction permit the jury to understand the hierarchy of homicide charges but it also allows the sentencing judge to know more clearly what intent the jury found when it declared the defendant guilty.
At the close of business yesterday, the jury asked this Court to define “grievous bodily harm” — the second prong of intent. This Court instructed the jury this morning, after careful review of the caselaw, “Grievous bodily harm is serious injury to another person’s body that the defendant knew to be life-threatening.” In selecting this definition, the Court reviewed Commonwealth v. Reed, 427 Mass. 100, 105 & n. 3 & 4 (1998), where the Supreme Judicial Court declared that it did not create a substantial risk of a miscarriage of justice to define “grievous bodily harm” as “severe injury to another person’s body.” This Court did not believe that instruction to be adequate to inform this jury. The jury certainly knows that grievous injury means serious injury, but was looking for more guidance than that as to what the magnitude of serious injury must be to find this second prong of intent. Moreover, this ambiguous definition arguably means that a person could be found guilty of second degree homicide through this second prong of intent even though a jury would not find “that the defendant intentionally inflicted an injury or injuries likely to cause death upon the deceased which caused his death,” which is how the Model Instructions define the intent needed to prove manslaughter. Without further definition, it is not at all plain that every “serious injury" necessarily is likely to cause death. I found that the Supreme Judicial Court, which approved the Model Instructions, certainly did not intend this second prong to be satisfied without proof that the injury was so serious as to be life-threatening. However, accepting the Supreme Judicial Court’s guidance in Reed at n. 4, I refused to *742 permit the jury to find that a reasonable person would find the serious injury to be life-threatening, since the Reed Court specifically rejected infecting the second prong with any reference to a reasonable person. Id. at n. 4. That is why I required that the defendant know that the injury was so serious as to be life-threatening. The definition I chose has two advantages over the instruction found acceptable in Reed. First, it assists the jury in understanding the severity of injury needed to prove the second prong of intent, since persons routinely distinguish between injuries that are and are not life threatening. Second, it conforms with the Model Instructions’ definition of voluntary manslaughter by not permitting a jury to find the defendant guilty of voluntary manslaughter on this second prong unless he recognized that the injury he inflicted was life-threatening.
APPENDIX 1 INVOLUNTARY MANSLAUGHTER
Now I will define involuntary manslaughter. As I said to you regarding voluntary manslaughter, I caution you that involuntary manslaughter is a legal term with a precise legal meaning, and ask you therefore to put aside any preconceptions you may have had as to what it means and replace those preconceptions with these instructions regarding the law of involuntary manslaughter.
Involuntary Manslaughter
There are two types of involuntary manslaughter, each with its own elements. The first type is involuntary manslaughter as a result of wanton or reckless conduct — defined as an unlawful killing unintentionally caused by wanton or reckless conduct creating a high degree of likelihood that substantial harm will result to another. The second type is involuntary manslaughter as a result of a battery — defined as an unlawful killing caused by the commission of a battery in circumstances which the person committing the battery knows or reasonably should know endanger human life. The defendant is guilty of involuntary manslaughter if you find him guilty of either type of involuntary manslaughter. However, you must be unanimous as to the type of involuntary manslaughter in order for the defendant to be guilty of involuntary manslaughter. That is why, if you reach the issue of involuntary manslaughter, I ask that you reach verdicts as to both types.
Wanton or Reckless Conduct
In order to prove the defendant guilty of involuntary manslaughter based on wanton or reckless conduct, the Commonwealth must prove four elements beyond a reasonable doubt:
1. That the defendant killed the alleged victim;
2. That the killing was unlawful and unexcused, and was not accidental;
3. That the defendant intended the conduct that caused the death; and
4.That the killing was caused by wanton or reckless conduct.
The first two elements of involuntary manslaughter are the same as the first two elements of voluntary manslaughter — that the defendant killed the alleged victim and that the killing was unlawful and unexcused and not accidental — and I will not repeat my instructions regarding those elements.
As to the third element, the Commonwealth must prove that the defendant intended the conduct that caused the death but the Commonwealth need not prove that the defendant intended the death which resulted from the conduct.
As to the fourth element, wanton or reckless conduct is an act creating a high degree of likelihood that substantial harm will result to another.[2] Wanton or reckless conduct is conduct involving a grave risk of harm to another which a person undertakes in indifference to or disregard of the consequences of such conduct.[3] Wanton or reckless conduct depends either on what the defendant knew or on how a reasonable person would have acted knowing those facts.[4] If the defendant realized the grave danger, his subsequent act, or failure to act when there was a duty to act, amounts to wanton or reckless conduct whether or not an ordinary person would have realized the gravity of the danger. Even if the defendant did not realize the grave danger of harm to another, but a reasonable person in like circumstances would have realized the risk of grave danger, the act or omission to act would constitute wanton or reckless conduct. The essence of wanton or reckless conduct is intentional conduct which either the defendant knew or a reasonable person would have known involved a high degree of likelihood that substantial harm would result to another even though the harm itself may not have been intended.
Under the law of manslaughter, a parent does not have a duty to take affirmative steps to protect a child from harm committed by another person. Comm. v. Raposo, 413 Mass. 182, 188 (1992). Consequently, if the defendant did nothing more than fail to prevent another person from harming Fatima, he may not be found guilty of manslaughter.
If the Commonwealth proved each of those elements beyond a reasonable doubt, you should find the defendant guilty of involuntary manslaughter as a result of wanton or reckless conduct. If the Commonwealth fails to prove one or more of those elements, you must find the defendant not guilty of involuntary manslaughter as a result of wanton or reckless conduct.
Battery
In order to find the defendant guilty of involuntary manslaughter as a result of a battery, the Commonwealth must prove beyond a reasonable doubt the following elements:
1. That the defendant killed the alleged victim;
*743 2. That the killing was unlawful and unexcused, and was not accidental;
3. That the defendant intended the conduct that caused the death; and
4. That the killing was caused by the defendant’s intentional commission of a battery upon the deceased which, under the circumstances, the defendant knew or reasonably should have known endangered human life.
The first two elements of involuntary manslaughter are the same as the first two elements of voluntary manslaughter — that the defendant killed the alleged victim and that the killing was unlawful and unexcused and not accidental — and I will not repeat my instructions regarding those elements.
As to the third element, the Commonwealth must prove that the defendant intended the conduct that caused the death but the Commonwealth need not prove that the defendant intended the death which resulted from the conduct.
As to the fourth element — that the killing was caused by the defendant’s intentional commission of a battery upon the deceased which, under the circumstances, the defendant knew or reasonably should have known endangered human life — I instruct you that a battery is the intentional and unjustified use of force upon the person of another. The battery may not be accidental. For a battery to constitute involuntary manslaughter, the battery must not only cause the death of the deceased, but the battery must also have been one which the defendant knew or reasonably should have known endangered human life. This element depends both on what the defendant knew and what a reasonable person would have known under the same circumstances. If the defendant actually knew that the battery he was committing endangered human life, then this element is satisfied whether or not an ordinary person would have realized that the battery endangered human life. If, on the other hand, the defendant did not realize that the battery he was committing endangered human life but a reasonable person in the same circumstances known by the defendant would have realized that the battery endangered human life, then this element is still satisfied. In determining whether the defendant reasonably should have known that the battery he was committing endangered human life, you must consider the nature and extent of the defendant’s knowledge at the time he acted, and whether in the circumstances known by the defendant, a reasonable person would have recognized that the battery endangered human life.
If the Commonwealth proves each of those elements beyond a reasonable doubt, then you should find the defendant guilty of involuntary manslaughter as a result of battery. If the Commonwealth fails to prove any of those elements beyond a reasonable doubt, you must find the defendant not guilty of involuntary manslaughter as a result of battery.

 This Court learned at 1:00 p.m. that the hearing was scheduled for 3:00 p.m. Therefore, this Court apologizes if it fails to set forth all the reasons that would be apparent from the transcript.

 Commonwealth v. Welansky, 316 Mass. 383, 399 (1944).

 Id. at 398.

 Commonwealth v. Grey, 399 Mass. 469, 472 n.4 (1987); Commonwealth v. Godin, 374 Mass. 120, 129-130 (1977).