**Karter REED, Petitioner,**

v.

**Timothy HALL, Superintendent of the Massachusetts Correctional, Institution at Norfolk, Massachusetts, and Thomas Reilly, Attorney General of Massachusetts, Respondents.**

No. 99–CV–10597–MEL.

United States District Court, D. Massachusetts.

April 4, 2001.

Dana A. Curhan, Boston, MA, for petitioner.

Catherine E. Sullivan, Assistant Attorney General, Criminal Bureau, Boston, MA, for respondents.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Karter Reed was convicted of second-degree murder by a jury in Bristol Superior Court, New Bedford, Massachusetts, for stabbing a student at Dartmouth High School on April 12, 1993. Reed appealed his conviction directly to the Massachusetts Supreme Judicial Court ("SJC"), which affirmed his conviction. *Commonwealth v. Reed*, 427 Mass. 100, 691 N.E.2d 560 (1998). Reed now petitions for a writ of habeas corpus seeking relief from his conviction because of an alleged error in the trial court's jury instructions.

The petition is dismissed.

### I.

On the morning of April 12, 1993, Reed and two friends, Gater Collet and Nigel Thomas, drove to Dartmouth High School looking for Sean Pina, a student with whom Thomas had had an earlier dispute and fight. Reed and his two friends parked in a no parking zone and rapidly entered the building. They carried with them a metal baseball bat and metal pipe/wrench handle.

The trio believed Pina could be found in James Murphy's freshman American Government class, and quickly sought out that classroom. Once there, Reed and Thomas stopped at the door, while Collet, holding a bat, entered the room and demanded to know where Pina was. Pina was not in the room, but Collet recognized Jason Robinson, a friend of Pina's. Collet began chasing Robinson around the classroom with the baseball bat. The room became chaotic. In the mayhem, Murphy managed to tackle Collet and disarm him.

While these events were happening, outside the classroom Assistant Principal Albert Porter came upon Reed and Thomas. On Porter's demand, Reed turned over the pipe/wrench handle he was holding. Porter, Reed, and Thomas then entered the classroom. Reed testified that once inside the classroom, the other students in the class began to threaten him and Thomas.

Reed took a knife from his pocket and moved toward Robinson, who was standing a few paces away from the door. Several witnesses saw Reed "punch" Robinson in the stomach; student Aaron Cormier attempted to block the thrust and was cut on the knuckle. Reed moved away from Robinson, and was subdued by other teachers

who had arrived in response to Murphy's yells for help. Reed, in the custody of teachers, soiled his pants before he was taken to the principal's office, where he was kept until the police arrived.

Robinson died from his wound to the stomach; Reed's knife had punctured Robinson's abdominal aorta and cut a quarter of an inch into one of his vertebra.

At trial, Reed's defense was that the stabbing was either an accident, negating the requisite intent for murder, or a reckless and wanton act, which would amount at most to involuntary manslaughter. The jury decided otherwise and returned a verdict of guilty of second-degree murder.

## II. The Jury Instruction and the Due Process Clause

Reed argues that the trial court denied him due process by instructing the jury, despite evidence he claims could reasonably support a finding that he had acted in self-defense, that "there are no issues of lawful self-defense... in this case." VII Tr. at 99. He contends that this instruction was essentially an impermissible directed verdict for the Commonwealth. *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), *citing Sparf and Hansen v. United States*, 156 U.S. 51, 105–06, 15 S.Ct. 273, 39 L.Ed. 343 (1895) (citation omitted) ("A verdict of acquittal cannot be set aside; and therefore, if the court can direct a verdict of guilty, it can do indirectly that which it has no power to do directly."). Reed contends further that the instruction preempted the Commonwealth from having to prove beyond a reasonable doubt that the defendant did not act in self-defense. *Commonwealth v. Rodriguez*, 370 Mass. 684, 687–88, 352 N.E.2d 203, 205–06 (1976). Reed notes that the federal Due Process Clause also requires a defendant be convicted "upon proof beyond a reasonable doubt of

every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, he contends that the SJC's decision to allow the conviction to stand violated the clearly established federal law as to due process. *See* 28 U.S.C. § 2254(d)(1).

The Commonwealth replies that Reed did not present sufficient evidence to justify a jury charge of self-defense, and that therefore the trial court was correct. *See Commonwealth v. Carrion*, 407 Mass. 263, 269, 552 N.E.2d 558, 562 (1990) (holding that a judge may exclude self-defense if the facts support such a decision). The Commonwealth insists that the instructions did not remove the burden from the Commonwealth to prove every element of the offense as required by *Winship* because, when read as a whole, *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the Commonwealth was required to prove beyond a reasonable doubt that the killing was unlawful.

### A. SJC Decision

The SJC held that the trial court had committed no error of state law by refusing to instruct on self-defense. The SJC explained that:

"[i]t is the rule that where the issue of self-defense has been sufficiently raised by the evidence, the defendant is entitled to an instruction which places on the Commonwealth the burden of disproving the factor of self-defense beyond a reasonable doubt." *Commonwealth v. Maguire*, 375 Mass. 768, 772, 378 N.E.2d 445 (1978). To raise the issue sufficiently, the evidence viewed in the light most favorable to the defendant must permit a reasonable doubt whether "the defen-

dant (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force; and (3) used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth v. Curtis,* 417 Mass. 619, 632, 632 N.E.2d 821 (1994), *quoting Commonwealth v. Harrington,* 379 Mass. 446, 450, 399 N.E.2d 475 (1980) . . . .

In the present case, there was no evidence of any of the required factors. *Reed,* 427 Mass. at 102–03, 691 N.E.2d at 563.

The SJC also held that the trial court's instruction informing the jury that self-defense was not at issue in the case was appropriate. On this issue, the SJC explained:

> [w]hile a judge may not "invade the province of the jury," *Commonwealth v. McDuffee,* 379 Mass. 353, 364, 398 N.E.2d 463 (1979), where there was no evidence raising the issue of self-defense, a judge may so inform the jury. *Commonwealth v. Carrion,* [407 Mass. at 268–69], 552 N.E.2d 558 (affirming conviction where judge told jury that "the evidence [does] not support any inference that [the victim] started the trouble; that would be beyond reasonable inference and as a matter of law, speculation and conjecture").

*Reed,* 427 Mass. at 103, 691 N.E.2d at 563 (citation omitted).

This court is bound by the SJC's determination of state law in Massachusetts, and to the extent Reed challenges the state law, he has no ground for relief. Moreover, issues of Massachusetts law do not, by themselves, raise federal constitutional questions.

## B. The Fourteenth Amendment's Due Process Clause

Given the SJC's decision, the only cognizable issues before this court are whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution: (1) requires a state trial court to instruct a jury on self-defense under the factual scenario presented here, or (2) prohibits a state trial court from instructing a jury that there is no issue of self-defense raised by the facts presented in this case.

### 1. The Failure to Instruct on Self–Defense

■ The federal standard for charging on self-defense is similar to the Massachusetts standard: "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *United States v. Bello,* 194 F.3d 18, 27 (1st Cir.1999) (applying *Mathews* to self-defense).

■ The issue then is whether "there exists evidence sufficient for a reasonable jury to find in [Reed's] favor." *Mathews,* 485 U.S. at 63, 108 S.Ct. 883. To establish self-defense under Massachusetts law, the evidence adduced must indicate that the defendant:

> (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably

necessary in all the circumstances of the case.

*Commonwealth v. Curtis,* 417 Mass. 619, 632, 632 N.E.2d 821, 830 (1994), *quoting Commonwealth v. Harrington,* 379 Mass. 446, 450, 399 N.E.2d 475, 479 (1980). Reed argues that he had an "imperfect self-defense" justification, meaning that he used excessive force in defending himself. His position is therefore that he acted in self-defense but that he did not use the amount of force that the third prong of the self-defense standard requires. This "imperfect self-defense" reduces a defendant's culpability from murder to voluntary manslaughter. *See, e.g., Commonwealth v. Boucher,* 403 Mass. 659, 663–64, 532 N.E.2d 37, 40 (1989) (holding that when self-defense is carried out with excessive force, a defendant would be guilty of manslaughter). Accordingly, only the first two prongs of the Massachusetts' self-defense test need to be reviewed.

### a. Imminent Danger of Death or Serious Bodily Harm

The first question is whether Reed "had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force." *Curtis,* 417 Mass. at 632, 632 N.E.2d at 830.

Reed argues that he presented evidence that he believed he was in imminent danger of physical harm sufficient for a reasonable jury to doubt that he was guilty of second degree murder. He cites in particular the evidence that: (1) he was pushed into the classroom by Assistant Principal Porter, according to his own testimony, indicating he did not want to enter; (2) he was threatened by various students in the classroom; (3) he testified that he was "scared;" and (4) he soiled his pants. Reed contends that the combination of these facts was sufficient to raise an issue of self-defense. The Commonwealth responds that the facts, when looked at in context, are insufficient.

The weight of the evidence is against Reed. For instance, Reed went to Dartmouth High School, which he did not attend, armed with a pipe/wrench handle and a knife, seeking to start a fight. Once there, he waited outside the classroom while his friend attempted to injure the eventual victim. Moreover, once he was "pushed" into the classroom, he was in a room filling with many teachers who presumably would have prevented him from being beaten up by a fearsome mob of students. Even though it makes little sense to stab someone in front of a crowd of teachers, the self-defense justification looks instead at Reed's perception of his own safety, which should be increased by the presence of teachers. Importantly, even if Reed was threatened by students in the class, he was not threatened, nor does he claim that he believed at the time that he was threatened, by the victim (who was too busy avoiding Reed's friend with a bat), as is required by Massachusetts self-defense law. *Commonwealth v. Glass,* 401 Mass. 799, 808, 519 N.E.2d 1311, 1317–18 (1988) ("self-defense may be raised only as to a victim who assaulted or threatened the defendant"). Finally, negating his fear of serious bodily harm, there is no evidence that anyone other than his friends had a weapon in the room. All told, SJC's determination that Reed had failed to present sufficient evidence regarding this first prong is correct.

### b. Physical Force as a Last Resort

The second condition of the Massachusetts' self-defense justification requires that a defendant "had availed himself of all proper means to avoid physical combat before resorting to the use of deadly

force." *Curtis,* 417 Mass. at 632, 632 N.E.2d at 830.

Reed contends that he presented enough evidence that he had attempted to avoid the use of deadly force for a reasonable jury to doubt his guilt. In particular, Reed points to his testimony that: (1) he attempted to leave the room, but found the door blocked by incoming teachers, and therefore went in another direction that turned out not to be an exit; and (2) he had never been in the room before, which partially explains his confusion. The Commonwealth again disputes that this evidence is sufficient to support his claim of self-defense.

The evidence on this point does not tend to show that Reed took all proper means to avoid using deadly force. For example, to avoid using deadly force Reed certainly could have gone to the door filled with teachers because he would have been protected by those same teachers, but he chose not to do so. Moreover, Reed himself testified that he moved toward the victim and there are numerous accounts that he "punched" the victim, who was at the time stationary.

### 2. Instructing the Jury that There was no Issue of Self–Defense

■ Given the above determinations, there is also no merit to Reed's claim that the trial court's jury charge that "there are no issues of lawful self-defense... in this case," was unconstitutionally incorrect. VII *Tr.* at 99. Both the trial court and the SJC properly and reasonably evaluated the facts and determined as a matter of law that Reed did not present sufficient evidence to raise the self-defense justification, and that accordingly there was no basis for putting the issue to the jury. The trial court's instruction was not tanta-

mount to a directed verdict for the government because the jury instructions clearly required the Commonwealth to prove beyond a reasonable doubt that the killing of Robinson was unlawful. It is disingenuous to suggest that there was a directed verdict on this issue when the trial court specifically instructed on accident as a proper justification, a parallel defense that the trial court acknowledged had been sufficiently raised by the evidence presented by Reed.

The jury instructions did not violate the Due Process Clause.

### C. 28 U.S.C. § 2254(d)(1)

The Antiterrorism and Effective Death Penalty Act[1] ("AEDPA") placed "a new constraint on the power of a Federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under AEDPA:

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *O'Brien v. Dubois,* 145 F.3d 16 (1st Cir.1998), the First Circuit provided a re-

---

**1.** Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) (codified in scattered sections of 8, 18, 22, 28, 40, and 42 U.S.C.).

finement of the meaning of the "unreasonable application" clause in 28 U.S.C. § 2254(d)(1). The Court of Appeals held that a state court's application of federal law is not "unreasonable" unless it is "so offensive to existing precedent, so devoid of record support, or so arbitrary as to indicate that it is outside the universe of plausible, credible outcomes." *O'Brien*, 145 F.3d at 25.

Reed argues that the SJC's decision is one of the few decisions that is in fact "outside the universe of plausible, credible outcomes." *O'Brien*, 145 F.3d at 25. The Commonwealth disagrees, arguing that the determination of the SJC, even if wrong, is at least reasonable and within the universe of plausible outcomes.

As explained above, the SJC's decision was both reasonable and correct.

### III.

Reed's petition for a writ of habeas corpus is dismissed.

It is so ordered.